No. 86,365

RALPH KELLY WHISLER, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(36 P.3d 290)

Opinion filed December 14, 2001.

*Nathan B. Webb*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the briefs for appellant.

*Jared S. Maag*, assistant attorney general, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Ralph Kelly Whisler was convicted of rape at the conclusion of a jury trial in 1995. Whisler's conviction and sentence were affirmed by the Court of Appeals in an unpublished opinion filed March 7, 1997. In October 2000, Whisler filed a K.S.A. 60-1507 motion in the district court where he was sentenced seeking relief based on *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). He appeals the district court's denial of his request for relief. The case was transferred from the Court of Appeals on Whisler's motion.

The sole issue raised by this appeal is whether *Apprendi* is to be applied retroactively to Whisler's sentence.

Whisler was convicted of raping D.T., a 43-year-old mentally retarded woman. At sentencing, the trial court stated that Whisler had been employed by Southwest Development Services Incorporated "with the job of helping to care for and supervise mentally disabled adults who . . . are not capable of living and working on their own." D.T. was an adult with a mental capacity of a 5-year-old child. The trial court viewed Whisler's relationship with D.T. as a fiduciary relationship in that he was charged with her care and supervision.

The presumptive guidelines sentence for Whisler's conviction of rape was a prison term of 86 to 77 months and a post-release supervision duration of 24 months. Upon the State's motion for imposition of a departure sentence, the trial court sentenced Whisler to a prison term of 120 months and a post-release supervision term of 60 months. The upward departure was based on the trial court's findings that there was a fiduciary relationship between Whisler and D.T. and that D.T. was particularly vulnerable due to mental retardation, which was well known to Whisler. The reasons for departure were listed as aggravating factors in K.S.A. 1994 Supp. 21-4716(b)(2)(A) and (D).

In October 2000, Whisler filed a K.S.A. 60-1507 motion in the district court where he was sentenced seeking relief based on *Apprendi*. He asked that his sentence be vacated and that he be resentenced in accord with *Apprendi*. Whisler contended that his sentence is illegal under *Apprendi* because the factors on which the trial court based its departure upward from the presumptive guidelines sentence were not found by a jury beyond a reasonable doubt. In *Apprendi*, the Supreme Court stated: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The district court's findings relative to Whisler's request for 60-1507 relief are stated as follows in the Memorandum Decision & Order Denying Request of Defendant:

"1. The plaintiff contends that the factors relied upon by the court to justify an upward departure were not presented to a jury or finder of fact and thus deter-

mined to be present beyond a reasonable doubt. The plaintiff cites *Apprendi v. New Jersey,* 530 U. S. 466 (2000).

"2. In the criminal case involving the plaintiff, Finney County Case No. 94 CR 590, [t]he factors used by the court, the vulnerability of the victim and a fiduciary relationship, were presented to the jury and so found by the jury to be present. See the decision of the Court of [A]ppeals filed March 7, 1997, Case No. 74, 336.

"3. Even if *Apprendi, supra,* is to be given retroactive application it does not apply in this particular case.

"4. On the face of the plaintiff's petition and the files and records of the court, the plaintiff is not entitled to relief.

"5. The plaintiff's request for relief pursuant to K.S.A. 60-1507 is denied."

The briefs of the parties to this appeal assume that the issue is whether *Apprendi* is to be applied retroactively to K.S.A. 60-1507 petitions for collateral review. The district court concluded that the sentencing rule announced in *Apprendi* was not violated in this case because the factors on which the departure sentence were based were found by the jury beyond a reasonable doubt. Examination of the record shows that the jury did not find that the State proved beyond a reasonable doubt that the victim was particularly vulnerable due to mental retardation, nor does the record show that the jury made any finding of a fiduciary relationship between defendant and victim.

The jury was instructed that the State could prove rape by proving beyond a reasonable doubt either that D.T. was incapable of giving consent due to her mental deficiency or that defendant raped D.T. without her consent when she was overcome by force or fear. The verdict form shows that the jury found the defendant "guilty of rape on both theories." Thus, there is no doubt that the jury found that D.T. was unable to consent, but that does not equate to the jury finding she was vulnerable for the purpose of upward departure. Although "unable to consent" and "vulnerability" are somewhat alike, they are not the same. The jury did not find the victim to be vulnerable. On direct appeal, the Court of Appeals rejected Whisler's complaints about the same factors supporting the conviction and the upward sentencing departure. The Court of Appeals agreed with Whisler that the reduced mental capacity factor was inherent in the offense, but concluded that Whisler's argument did not affect the sentence: "The jury con-

victed Whisler under both theories. D.T.'s mental deficiency was not an element of rape under the alternative theory that she was overcome by force or fear. Therefore, the trial court was justified in using that factor as a reason for departure." This court denied review of the decision of the Court of Appeals. 262 Kan. 968.

We conclude that if *Apprendi* is retroactively applied, Whisler would be entitled to relief as to his sentence. We will turn first to *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001). In *Gould*, the court considered whether *Apprendi* affected K.S.A. 2000 Supp. 21-4716, which requires the sentencing judge to impose the presumptive guidelines sentence unless the judge finds substantial and compelling reasons to impose a departure. The court stated that *Apprendi* dictated the conclusion that the Kansas statutory scheme for imposing upward departure sentences "violates the due process and jury trial rights contained in the Sixth and Fourteenth Amendments to the United States Constitution." 271 Kan. at 414.

The court expressly addressed the question of retroactivity that inevitably would be raised by its invalidating the upward departure provisions of K.S.A. 2000 Supp. 21-4716:

"Our holding on the constitutionality of upward departures under the KSGA has no retroactive application to cases final as of June 26, 2000, the date *Apprendi* was decided. However, the new constitutional sentencing rule established by *Apprendi* must be applied here and in all cases pending on direct appeal or which are not yet final or which arose after June 26, 2000. See *State v. Hood*, 242 Kan. 115, 117, 744 P.2d 816 (1987)." 271 Kan. at 414.

The Court of Appeals' opinion in this case was filed on March 7, 1997. Review was denied and the mandate was issued on April 30, 1997. 262 Kan. 968.

According to the court's pronouncement in *Gould*, the new constitutional sentencing rule established by *Apprendi* has no application in this case. Despite the clear statement in *Gould*, Whisler contends that *Apprendi* applies to his sentence because he raised the issue in his direct appeal and because federal case law requires the new sentencing rule to be applied retroactively.

Whisler states that in his direct appeal he raised the issue of whether the departure factors identified by the sentencing judge were an improper basis for departure because they were elements

of the crime. He contends that the issue on direct appeal is sufficiently related to the *Apprendi* rule so that he preserved the issue for further review. There is no merit to his contention. On direct appeal, he argued that the departure factors already had been considered by the jury in reaching a verdict of guilty and therefore should not be reconsidered by the trial court in determining sentence. As the Court of Appeals stated, there were "elements of double jeopardy flowing through" Whisler's argument. His argument was that the factors could not be considered for both conviction and sentence. His argument was not that the jury had to find that the factors had been proved beyond reasonable doubt in order for them to be considered for sentencing.

Whisler spurns the efficacy of the court's statement regarding retroactivity in *Gould* on the ground that the pronouncement is dicta. He views Kansas case law as irrelevant in that it centers on the prohibition of ex post facto laws. To illustrate his point he cites *State v. Billington*, 24 Kan. App. 2d 759, 761, 953 P.2d 1059 (1998), which involved the question of whether an amended statute operated retrospectively or prospectively. Whisler ignored Kansas cases involving overruling decisions rather than new legislation. The court's general rule with regard to application of an overruling decision has been stated as applying the decision "retroactively to all similar cases pending as of the date of the overruling decision, regardless of when the cause of action accrued." *State v. Waterberry*, 248 Kan. 169, 172, 804 P. 2d 1000 (1991) (expanding its own restriction of the rule of *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), to include cases pending in Kansas courts as of May 31, 1990, the date of the *Hall* opinion). Whisler relies on *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989).

The State also relies on *Teague*. The State cites *State v. Neer*, 247 Kan. 137, 795 P.2d 362 (1990), a case of evolving case law rather than new legislation, for the proposition that this court will analyze such a retroactivity question according to *Teague*.

*Neer* involved an appeal from the trial court's refusal to modify the defendant's sentence. Neer argued that there was insufficient evidence to sustain his conviction for aggravated criminal sodomy based on the court's holding in *State v. Moppin*, 245 Kan. 639, Syl.

¶ 1, 783 P.2d 878 (1989), that cunnilingus is not 'sodomy' under K.S.A. 21-3501(2). Neer had not raised the issue at trial or on direct appeal, but he argued that as a matter of fundamental fairness the decision in *Moppin* should be applied retroactively to set aside his conviction of aggravated criminal sodomy. He relied on *Teague*. This court also relied on *Teague*.

Teague, a black man, was convicted of serious crimes by an all-white Illinois jury. The prosecuting attorney had used all his peremptory challenges to exclude blacks. Several years after his conviction, Teague filed a petition for a writ of habeas corpus. While the appeal from denial of his petition was pending in the Court of Appeals, the United States Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). The Court of Appeals held that Teague could not benefit from the rule of *Batson* because in *Allen v. Hardy*, 478 U.S. 255, 92 L. Ed. 2d 199, 106 S. Ct. 2878 (1986), the Supreme Court had held that *Batson* would not be applied retroactively to cases on collateral review.

On *certiorari*, the Supreme Court relied on *Allen* in rejecting Teague's contention that he should receive the benefit of the decision in *Batson* even though his conviction became final before *Batson* was decided. 489 U.S. at 296. *Batson* overruled a portion of *Swain v. Alabama*, 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824 (1965). *Swain* held that it was a violation of equal protection for a State to purposefully deny to blacks, solely on account of race, an opportunity to serve as jurors. 380 U.S. at 203-04. "In order to establish a prima facie case of discrimination under *Swain*, a defendant had to demonstrate that the peremptory challenge system had been 'perverted.' " 489 U.S. at 294. In *Batson*, the Supreme Court "overruled that portion of *Swain* setting forth the evidentiary showing necessary to make out a prima facie case of racial discrimination under the Equal Protection Clause." 489 U.S. at 295. In *Allen*, the Supreme Court held that *Batson* constituted "an 'explicit and substantial break with prior precedent' because it overruled a portion of *Swain*." 489 U.S. at 295. "Employing the retroactivity standard of *Linkletter v. Walker*, 381 U.S. 618, 636 [, 14 L. Ed. 2d 601, 85 S. Ct. 1731] (1965), the Court concluded that the rule

announced in *Batson* should not be applied retroactively on collateral review of convictions that became final before *Batson* was announced." 489 U.S. at 295.

Teague's other contentions also were turned down by the Supreme Court. His second argument was that he had established an equal protection violation under *Swain*. The Supreme Court examined Illinois state court decisions to conclude that Teague's failing to raise *Swain* at trial or on direct appeal forfeited review of the claim in the Illinois courts, that collateral review likewise was unavailable in the state courts under Illinois decisions, and that federal habeas corpus relief was unavailable under federal decisions. 489 U.S. at 297-99.

Teague's third contention, "that the Sixth Amendment's fair cross section requirement applies to the petit jury," 489 U.S. at 299, would have necessitated reversing the express statement in *Taylor v. Louisiana*, 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692 (1975), that the Sixth Amendment requirement applied only to the jury venire, not to the petit jury. In discussing Teague's Sixth Amendment claim, the Supreme Court adopted an approach to retroactivity for cases on collateral review that had been advocated by Justice Harlan in *Mackey v. United States*, 401 U.S. 667, 675, 28 L. Ed. 2d 404, 91 S. Ct. 1160 (1971). 489 U.S. at 310.

"Justice Harlan believed that new rules generally should not be applied retroactively to cases on collateral review." 489 U.S. at 305. He "identified only two exceptions to his general rule of nonretroactivity for cases on collateral review." 489 U.S. at 307. The exceptions formulated by Justice Harlan were described in *Teague*: "First, a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' (Citation omitted.) Second, a new rule should be applied retroactively if it requires the observance of 'those procedures that . . . are "implicit in the concept of ordered liberty." ' (Citations omitted.)" 489 U.S. at 307.

In suggesting this analysis, Justice Harlan drew a strong distinction between direct review and collateral review. In explaining its reasoning in belatedly adopting Justice Harlan's suggested analysis, the Supreme Court seconded the importance of that difference for

the purpose of giving retroactive effect. The Supreme Court stated generally: "Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." 489 U.S. at 309. Speaking specifically of the need for finality in state court convictions, the Supreme Court quoted Justice Powell's concurring opinion in *Solem v. Stumes*, 465 U.S. 638, 654, 79 L. Ed. 2d 579, 104 S. Ct. 1338 (1984), to the effect that the " 'costs imposed upon the State[s] by retroactive application of new rules of constitutional law on habeas corpus . . . generally far outweigh the benefits of this application.' " 489 U.S. at 310. The Court continued:

"In many ways the application of new rules to cases on collateral review may be more intrusive than the enjoining of criminal prosecutions, *cf. Younger v. Harris*, 401 U.S. 37, 43-54 [, 27 L. Ed. 2d 669, 91 S. Ct. 746] (1971), for it *continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards.* Furthermore, as we recognized in *Engle v. Isaac*, '[s]tate courts are understandably frustrated when they faithfully apply existing constitutional law only to have a federal court discover, during a [habeas] proceeding, new constitutional commands.' 456 U.S. [107], at 128 n 33, 71 L. Ed. 2d 783, 102 S. Ct. 1558 [(1982)]. See also *Brown v. Allen*, 344 U.S. [443], at 534 [, 97 L. Ed. 469, 73 S. Ct. 397 (1953)] (Jackson, J., concurring in result) (state courts cannot 'anticipate, and so comply with, this Court's due process requirements or ascertain any standards to which this Court will adhere in prescribing them').

"We find these criticisms to be persuasive, and we now adopt Justice Harlan's view of retroactivity for cases on collateral review. Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310.

The Supreme Court concluded that the first exception suggested by Justice Harlan was not relevant in Teague's case because "[a]pplication of the fair cross section requirement to the petit jury would not accord constitutional protection to any primary activity whatsoever." 489 U.S. at 311. The Court combined Justice Harlan's second suggested exception with an "accuracy element" that would serve "one of the two principal functions of habeas corpus," which was to safeguard against a constitutional violation resulting in con-

viction of an innocent person. 489 U.S. at 312. The second exception, as stated and applied in *Teague*, requires an inquiry whether the absence of the new rule would "undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction." 489 U.S. at 315. In Teague's case, the Supreme Court "conclude[d] that a rule requiring that petit juries be composed of a fair cross section of the community would not be a 'bedrock procedural element' that would be retroactively applied under the second exception." 489 U.S. at 315.

Whisler cites *United States v. Hernandez*, 137 F. Supp. 2d 919 (N. D. Ohio 2001), for its retroactive application of *Apprendi* on collateral review. Examination of recent case law reveals that there is a split among courts that have addressed the issue and that the reasoning and result of *Hernandez* are not in the majority. The court in *Hernandez* reasoned that the *Apprendi* rule was substantive rather than procedural and thus applied retroactively to Hernandez' sentence.

The questionable idea is that court's regarding "substantive" to mean important rather than regarding it as the counterpart of procedural. In criminal matters, the concepts of law and procedure generally are accepted as including what constitutes offenses on the one hand and the process by which offenders are brought to justice on the other. Thus, a most profound criminal matter may well be categorized as procedural rather than substantive. An example known to all is *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), which conditioned the admissibility of a statement given during custodial interrogation of a suspect on specific warnings and has been called "the centerpiece of the Warren Court's 'revolution in American criminal procedure.' " Israel, Kamisar, and LaFave, Criminal Procedure and the Constitution, p. 310 (1992).

A counter argument to the *Hernandez* view can be found in the *Apprendi* decision itself. In the majority opinion, the court stated:

"[A]lthough the constitutionality of basing an enhanced sentence on racial bias was argued in the New Jersey courts, that issue was not raised here. (Footnote omitted.) The substantive basis for New Jersey's enhancement is thus not at issue;

the adequacy of New Jersey's procedure is. The strength of the state interests that are served by the hate crime legislation has no more bearing on this procedural question than the strength of the interests served by other provisions of the criminal code." 530 U.S. at 475.

The question presented in *Apprendi* was "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." 530 U.S. at 469.

The small number of *Apprendi*-applying cases that delve into the seemingly intractable business of separating procedural from substantive might be taken as an indication a sound analysis need not begin with that question. As noted above, there is language in *Teague* that would support the view that it applies only to procedural matters. In fact, the court's holding was worded in terms of "new constitutional rules of criminal procedure." 489 U.S. at 310. The significance of *Teague* at the time it was decided—1989—was in deciding what was to be done about law-changing decisions on habeas review. In *Linkletter v. Walker*, 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965), the Supreme Court declined to retroactively apply *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961), which imposed the exclusionary rule on the states as a matter of due process. The Supreme Court acknowledged that it had given full retroactive effect to recent law-changing decisions, including *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963), but in *Linkletter* the Court limited the retroactive effect of new rulings. The next major step in this line of decisions was taken in *United States v. Johnson*, 457 U.S. 537, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982), where the Court broadened *Linkletter* by distinguishing between final convictions and those still pending on direct review. *Johnson* applied *Payton v. New York*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980), to cases pending on direct appeal at the time *Payton* was decided. *Teague* was the next step. It determined the retroactive effect of new rules on collateral review. See Kamisar, LaFave, and Israel, Modern Criminal Procedure, pp. 46-51, 1670 (8th ed. 1994). Thus, *Teague* is the case that governs retroactivity of new

rules on collateral review. *Teague* involved a procedural matter. There is no Supreme Court case plotting a different path for substantive criminal matters.

Since the *Apprendi* decision, the Supreme Court decided *Tyler v. Cain,* 533 U.S. 970, 150 L. Ed. 2d 632, 121 S. Ct. 2478, *reh. denied* 533 U.S. 970 (2001), in which the question was whether a constitutional rule regarding jury instructions that was announced in *Cage v. Louisiana,* 498 U.S. 39, 112 L. Ed. 2d 339, 111 S. Ct. 328 (1990), was " 'made retroactive to cases on collateral review by the Supreme Court.' " 150 L. Ed. 2d at 640. The Court held that it was not and declined to do so. In discussing Tyler's contention that *Cage* warranted retroactive application under *Teague,* the majority stated in a footnote:

"As explained above, the second *Teague* exception is available only if the new rule ' " '*alter[s] our understanding* of the bedrock procedural elements' " essential to the fairness of a proceeding.' *Sawyer v. Smith,* 497 U.S. 227, 242, 111 L. Ed. 2d 193, 110 S. Ct. 2822 (1990) (quoting *Teague v. Lane,* 489 U.S. 288, 311, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989) (plurality opinion), in turn quoting *Mackey v. United States,* 401 U.S. 667, 693, 28 L. Ed. 2d 404, 91 S. Ct. 1160 (1971) (Harlan, J., concurring in judgments in part and dissenting in part) (emphasis added)). Classifying an error as structural does not necessarily alter our understanding of these bedrock procedural elements. Nor can it be said that all new rules relating to due process (or even the 'fundamental requirements of due process,' see *post,* at 2489 (dissenting opinion)) alter such understanding. See, *e.g., Sawyer,* supra, at 244, 110 S. Ct. 2822 (holding that the rule in *Caldwell v. Mississippi,* 472 U.S. 320, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985), did not fit within the second *Teague* exception even though it 'added to an existing guarantee of due process protection against fundamental unfairness'); *O'Dell v. Netherland,* 521 U.S. 151, 167, 138 L. Ed. 2d 351, 117 S. Ct. 1969 (1997) (holding that the rule in *Simmons v. South Carolina,* 512 U.S. 154, 129 L. Ed. 2d 133, 114 S. Ct. 2187 (1994), which has been described as serving 'one of the hallmarks of due process,' *id.,* at 175, 129 L. Ed. 2d 133, 114 S. Ct. 2187 (O'Connor, J, concurring in judgment), did not fit within the second *Teague* exception). On the contrary, the second *Teague* exception is reserved only for truly 'watershed' rules. See *O'Dell,* supra, at 167, 138 L. Ed. 2d 351, 117 S. Ct. 1969; see also *Caspari v. Bohlen,* 510 U.S. 383, 396, 127 L. Ed. 2d 236, 114 S. Ct. 948 (1994) (describing such rules as 'groundbreaking'); *Graham v. Collins,* 506 U.S. 461, 478, 122 L. Ed. 2d 260, 113 S. Ct. 892 (1993) (explaining that the exception is limited to 'a small core of rules,' which not only seriously enhance accuracy but also 'requir[e] "observance of those procedures that . . . are implicit in the concept of ordered liberty" ') (quoting *Teague,* supra, at 311, 103 L. Ed. 2d 334, 109 S. Ct. 1060

(internal quotation marks omitted)); *Saffle v. Parks*, 494 U.S. 484, 495, 108 L. Ed. 2d 415, 110 S. Ct. 1257 (1990) (focusing on 'primacy and centrality' of the rule). As we have recognized, it is unlikely that any of these watershed rules 'ha[s] yet to emerge.' *Sawyer, supra*, at 243, 111 L. Ed. 2d 193, 110 S. Ct. 2822 (quoting *Teague, supra*, at 313, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (plurality opinion)); see also *Graham, supra*, at 478, 122 L. Ed. 2d 260, 113 S. Ct. 892." 150 L. Ed. 2d at 645 n.7.

Justice O'Connor wrote a separate concurring opinion in *Tyler* for the purpose of "explain[ing] more fully the circumstances in which a new rule is 'made retroactive to cases on collateral review by the Supreme Court.'" 150 L. Ed. 2d at 646. Scrutiny of her concurring opinion does not yield any particular insight into her use of the term "watershed" in her *Apprendi* dissenting opinion.

As a final observation on the substantive/procedural discussion and the applicability of *Teague*, it should be noted that this court unhesitatingly analyzed Neer's request according to the precepts of *Teague*. The issue in *Neer*, as discussed elsewhere, involved the elements of his offense. This court gave two reasons why Neer's conviction was not affected by *Moppin*, and neither implicates the substantive nature of his claim. The court stated:

"First, in his original appeal, Neer failed to raise the question of sufficiency of the evidence . . . . Second, neither *Moppin*, which determined that cunnilingus is not included in the definition of 'sodomy,' nor Neer's claim that there was insufficient evidence for his conviction for aggravated criminal sodomy reaches the magnitude that permits collateral attack under the new constitutional rule of criminal procedure doctrine of [*Teague*]." 247 Kan. at 143-44.

The federal district court in the district of Kansas sides with the majority of federal courts in concluding that *Apprendi* should not be applied retroactively. *United States v. Moss*, 137 F. Supp. 2d 1249 (D. Kan. 2001). In November 2000, 10 years after being sentenced, Moss filed a motion for post-conviction relief in light of *Apprendi*. 137 F. Supp. 2d at 1251-52. Unlike *Hernandez*, where the threshold question was whether *Apprendi* announced a procedural or substantive rule, the district court's analysis in *Moss* began from the premise, which was stated in *United States v. Heckard*, 238 F.3d 1222, 1234 (10th Cir. 2001), that "*Apprendi* clearly presents a 'new' rule of constitutional criminal procedure." 137 F.

Supp. 2d at 1252. With no question about the procedural nature of the *Apprendi* rule, the district court considered whether it fit within either of the *Teague* exceptions. With regard to the exceptions, the district court sketched this diagram for inquiry:

"Under *Teague* . . . only two types of new rules may be applied retroactively to cases on collateral review: (1) a rule which places 'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe,' and (2) a watershed constitutional rule of criminal procedure which requires the observance of 'those procedures that . . . are implicit in the concept of ordered liberty.' (Citations omitted.) A rule that qualifies under the 'watershed' exception 'must not only improve accuracy, but also "alter our understanding of the bedrock procedural elements" essential to the fairness of a proceeding.' (Citations omitted.) 'The scope of the Teague exceptions must be consistent with the recognition that "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." ' (Citations omitted.)" 137 F. Supp. 2d at 1252.

The district court promptly concluded that the first exception did not apply because *Apprendi* did not place conduct beyond the power of law-making authority to proscribe. 137 F. Supp. 2d at 1252.

With regard to the second exception, the district court observed that numerous federal courts have held that *Apprendi* does not satisfy it, but only two federal district courts and one state appellate court had concluded otherwise. 137 F. Supp. 2d at 1252-53. The district court agreed with the reasoning of the courts that had found that *Apprendi* does not qualify as a watershed rule of criminal procedure:

"*Apprendi* announced two new rules of criminal procedure: (1) other than the fact of a prior conviction, the jury, not the judge, must determine any facts that increase the penalty for a crime beyond the statutory maximum and (2) the jury must find such facts beyond a reasonable doubt. See *Apprendi,* 120 S. Ct. at 2362-63, 120 S. Ct. 2348. These rules do not alter our basic understanding of the bedrock procedural requirements essential to a fair proceeding (such as the right to counsel). See *Saffle v. Parks,* 494 U.S. 484, 495, 110 S. Ct. 1257, 108 L. Ed.2d 415 (1990) (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed.2d 799 (1963), to illustrate type of rule within watershed exception); *Levan,* at 278 ('Shifting an element of the offense from jury to judge and utilizing a preponderance rather than a beyond a reasonable doubt standard does not implicate fundamental fairness or relate to the accuracy of the conviction or sentence.'); see

also *O'Dell v. Netherland*, 521 U.S. 151, 167, 117 S. Ct. 1969, 138 L. Ed.2d 351 (1997) (defendant's right to advise capital sentencing jury about parole eligibility not watershed rule); *Lambrix v. Singletary*, 520 U.S. 518, 539-40, 117 S. Ct. 1517, 137 L. Ed.2d 771 (1997) (defendant's right not to have jury consider certain aggravating circumstances not watershed rule); *Sawyer*, 497 U.S. at 244, 110 S. Ct. 2822 (procedural enhancement to accuracy of capital sentencing announced in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed.2d 231 (1985) not watershed rule); *Andrews v. Deland*, 943 F.2d 1162, 1187 (10th Cir.1991) (constitutional right to lesser included offense instruction in capital cases not watershed rule).

"In *Teague*, Justice O'Connor explained the extremely limited nature of the exception for watershed rules of criminal procedure:

'Finally, we believe that Justice Harlan's concerns about the difficulty in identifying both the existence and the value of accuracy-enhancing procedural rules can be addressed by limiting the scope of the second exception to those new procedures without which the likelihood of an accurate conviction is seriously diminished.

'Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge. We are also of the view that such rules are "best illustrated by recalling the classic grounds for the issuance of a writ of habeas corpus—that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that the conviction was based on a confession extorted from the defendant by brutal methods." *Rose v. Lundy*, 455 U.S. 509, 544, 102 S. Ct. 1198, 1216-1217, 71 L. Ed.2d 379 (1982) (STEVENS, J., dissenting) (footnotes omitted).' " *Teague*, 489 U.S. at 313-14, 109 S. Ct. 1060." 137 F. Supp. 2d at 1253.

The district court added that there was indirect additional support for its conclusion that *Apprendi* is not a watershed rule in the Tenth Circuit's reviewing *Apprendi* claims on direct appeal only for plain error citing *United States v. Keeling*, 235 F.3d 533, 538 (10th Cir. 2000), and in the "very few cases" that have been reversed on direct appeal. 137 F. Supp. 2d at 1253-54.

In a footnote to the *Moss* opinion, the district court discounts the apparent association of terms in *Teague* and in Justice O'Connor's dissenting opinion in *Apprendi*:

"The Court recognizes that in her dissent in *Apprendi*, Justice O'Connor stated that the ruling 'will surely be remembered as a watershed change in constitutional law.' *Apprendi*, 120 S. Ct. at 2380. The Court does not read this statement as a finding that *Apprendi* should be applied retroactively to cases on collateral review, particularly in light of Justice O'Connor's explanation in *Teague* of the limited

scope of cases which fall within the 'watershed' exception. See *Teague*, 489 U.S. at 313-14, 109 S. Ct. 1060." 137 F. Supp. 2d at 1254 n.4.

In her dissent in *Apprendi*, Justice O'Connor expressed the view that the majority, in a move unsupported by precedent, created the rule "that a defendant is entitled to have a jury decide, by proof beyond a reasonable doubt, every fact relevant to the determination of sentence under a determinate-sentencing scheme." 530 U.S. at 549. She predicted that perhaps the most significant impact of the Court's decision would be "its unsettling effect on sentencing conducted under current federal and state determinate-sentencing schemes." 530 U.S. at 550. She continued:

"[T]he Court does not say whether these schemes are constitutional, but its reasoning strongly suggests that they are not. Thus, with respect to past sentences handed down by judges under determinate-sentencing schemes, the Court's decision threatens to unleash a flood of petitions by convicted defendants seeking to invalidate their sentences in whole or in part on the authority of the Court's decision today." 530 U.S. at 550-51.

There are many recent cases from lower courts on or touching on the question of *Apprendi* retroactive application to cases on collateral review. There would seem to be little purpose, however, in prolonging this discussion with more case citations and synopses. The rationale, for and against, are apparent from the cases already discussed, and we are not aware of any other rationale among the unexamined opinions.

In our line of cases involving law-changing decisions is *State v. Neer*, 247 Kan. 137, already discussed in this opinion. In *Neer*, the court adopted the *Teague* formulation for determining retroactive application of new constitutional rules announced in law-changing decisions. 247 Kan. at 141-44. With no discussion whether the new decision was procedural or substantive, the court applied *Teague*.

Although a few courts have steered away from *Teague* on the ground that the *Apprendi* rule is substantive rather than procedural, see *Hernandez*, 137 F. Supp. 2d 919, the greater weight of opinion is that the *Apprendi* rule (along with nearly all groundbreaking constitutional rules from the last 50 years) are matters of criminal procedure. Hence, *Teague* provides the analysis for retroactive application.

*Teague* states a general rule of nonretroactivity. Under *Teague*, new rules are not retroactive unless they meet one of two exceptions. Of the two exceptions to the general rule, only the second need be considered here. As we have seen, courts that have considered the second *Teague* exception applicable to give *Apprendi* retroactive effect are in the minority. As of the date of this writing, no federal circuits have applied *Apprendi* retroactively, but one panel of the Eighth Circuit Court of Appeals expressed reluctance at applying the nonretroactive rule already decided by another panel of its court. *Jarrett v. United States*, 266 F.3d 789 (8th Cir. 2001), citing *United States v. Moss*, 252 F. 3d 993 (8th Cir. 2001).

We agree with the rationale of the majority of courts which have concluded that the new rule announced in *Apprendi* is not a watershed rule of criminal procedure that implicates the fundamental fairness of trial. Thus, neither *Teague* exception applies and based on our holding in *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001), the *Apprendi* rule does not retroactively apply to Whisler's sentence, and he is not entitled to relief.

Affirmed.