NOT DESIGNATED FOR PUBLICATION

No. 114,107

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT JOE BARNES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed September 30, 2016. Sentence vacated and case remanded with directions.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Brian R. Sherwood*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and STANDRIDGE, JJ.

STANDRIDGE, J.:  Robert Joe Barnes appeals the district court's decision to deny his motion to correct an illegal sentence. Specifically, Barnes argues that the sentencing court erred in classifying his 1978 Texas burglary conviction as a person felony for criminal history purposes, which resulted in an illegal sentence. Barnes claims that the district court's misclassification involved impermissible judicial factfinding prohibited by *Descamps v. United States*, 570 U.S. __, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), as applied by our state in *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015). For the

1

reasons stated below, we vacate Barnes' sentence and remand to the district court for further proceedings in order to determine if Barnes is entitled to relief.

FACTS

On October 19, 2009, Barnes pled no contest to one count of attempted failure to register as required by the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq.*, a severity level 7 person felony. The presentence investigation (PSI) report prepared before sentencing indicated that Barnes' criminal history score was a C, based in part on a prior 1978 conviction of burglary in Spearman, Texas, which was classified as a person felony. While Barnes objected to some criminal history listed on his PSI report, he did not specifically object to the conviction of burglary or to his criminal history score of C at the time of sentencing. On January 6, 2010, Barnes was sentenced to 24 months' probation with an underlying prison term of 27 months.

In September 2011, the district court revoked Barnes' probation and imposed the original sentence of 27 months in prison. Barnes subsequently appealed the revocation of his probation, which was upheld on appeal. See *State v. Barnes*, No. 107,880, 2014 WL 642948 (Kan. 2014) (unpublished opinion).

On January 15, 2015, Barnes filed a motion to correct an illegal sentence based on *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). On May 21, 2015, the district court denied the motion on three grounds:  (1) invited error, (2) res judicata, and (3) nonretroactivity of *Murdock*. The next day, however, our Supreme Court issued its decision in *Dickey*, upon which Barnes now relies to support his appeal from the district court's decision to deny his motion to correct illegal sentence.

ANALYSIS

Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which this court has unlimited review. A sentence is illegal if: (1) a court imposes it without jurisdiction; (2) it does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) it is ambiguous with respect to the time and manner in which it is to be served. *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014). Whether a prior conviction should be classified as a person or nonperson offense is also a question of law subject to unlimited review. *Keel*, 302 Kan. at 571.

*The State's procedural arguments*

The State contends that this court need not reach the question of illegal sentence because (1) K.S.A. 22-3504 is the incorrect procedural vehicle for Barnes' claim; (2) Barnes is not entitled to have *Dickey* retroactively applied to his case; and (3) Barnes has waived his right to challenge his sentence as illegal.

1. *Incorrect procedural vehicle*

The State argues that Barnes' sentence is not illegal as contemplated by K.S.A. 22-3504(1) because Barnes makes a constitutional claim, which does not make a sentence illegal under Kansas law. See, *e.g.*, *State v. Warrior*, 303 Kan. 1008, Syl., 368 P.3d 1111 (2016) ("A motion to correct illegal sentence under K.S.A. 22-3504[1] is an improper procedural vehicle for a constitutional claim.").

But *Dickey* held that a challenge to a criminal history score is proper under K.S.A. 22-3504 because it is a claim that the sentence does not conform to the applicable statutory provision regarding the authorized punishment. 301 Kan. at 1034; see *State v. Luarks*, 302 Kan. 972, 975, 360 P.3d 418 (2015) (claim alleging misclassification of prior

convictions as person offenses "necessarily raise[s] a claim that the current sentence is illegal because it does not comply with the applicable statutory provision regarding the term of punishment authorized"); *State v. Neal*, 292 Kan. 625, 631, 258 P.3d 365 (2011) (challenge to criminal history score necessarily challenges sentence that criminal history score helped produce). This court is bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. 1012 (2015). We see no indication the Supreme Court is departing from its position and find that Barnes' motion to correct an illegal sentence was an appropriate means of advancing his claim concerning the classification of his prior conviction.

## 2. *Retroactive application of* Dickey

The State contends that *Dickey* may not be retroactively applied to Barnes' case, which became final in 2010, well before *Dickey* was decided. As a general rule, "when an appellate court decision changes the law, that change acts prospectively and applies only to all cases, state or federal, that are pending on direct review or not yet final on the date of the appellate court decision." *State v. Mitchell*, 297 Kan. 118, Syl. ¶ 3, 298 P.3d 349 (2013).

However, the court's holding in *Dickey* is not a "change in the law" under that analysis, but rather an application of the constitutional rule announced in *Apprendi* and clarified by *Descamps*. See *Dickey*, 301 Kan. at 1021 ("[C]lassifying Dickey's prior burglary adjudication as a person felony violates his constitutional rights as described under *Descamps* and *Apprendi*."); *State v. Martin*, 52 Kan. App. 2d 474, 484, 369 P.3d 959 (2016) ("*Descamps* provided a means by which to determine whether certain sentencing determinations violated *Apprendi*, and *Dickey* applied that framework to Kansas criminal history determinations."). Accordingly, the date *Apprendi* was decided is the relevant date for purposes of the retroactivity analysis. *State v. Gould*, 271 Kan. 394,

4

23 P.3d 801 (2001). In *Gould*, the court indicated that all post-*Apprendi* cases must comply with the constitutional rule announced in that case:

> "Our holding on the constitutionality of upward departures under the KSGA [Kansas Sentencing Guidelines Act] has no retroactive application to cases final as of June 26, 2000, the date *Apprendi* was decided. However, the new constitutional sentencing rule established by *Apprendi* must be applied here and in all cases pending on direct appeal *or which are not yet final or which arose after June 26, 2000.* [Citation omitted.]" (Emphasis added.) *Gould*, 271 Kan. at 414.

Barnes' claim seeking relief from an illegal sentence in this case arose well after *Apprendi*; therefore, applying the *Apprendi* constitutional analysis set forth in *Dickey* is not an improperly retroactive application of that law. *Cf. Whisler v. State*, 272 Kan. 864, 36 P.3d 290 (2001) (direct appeal final prior to *Apprendi* decision, so *Apprendi* was not retroactively applied). Our finding in this regard corresponds with this court's finding in *Martin*:

> "[W]e find that retroactivity analysis is not applicable when it is determined by a court that a constitutional error affects the defendant's criminal history score resulting in an illegal sentence. The legislative directive in K.S.A. 22-3504(1) allows courts to correct an illegal sentence at any time. Thus, we conclude that a claim under *Dickey* may be brought by a defendant in a motion to correct illegal sentence even when the time for direct appeal has passed and the defendant's sentence is final." 52 Kan. App. 2d at 483-84.

As the court did in *Martin*, we conclude Barnes is not procedurally barred from obtaining relief from an illegal sentence based on the fact that Barnes' case was final when the Supreme Court's opinion in *Dickey* was filed.

3. *Waiver*

The State argues Barnes has waived his right to challenge any alleged error by the district court in classifying his prior conviction for burglary as a person offense for purposes of calculating his criminal history score. In Kansas, waiver is defined as the voluntary and intentional relinquishment of a known right and the expression of an intention not to insist upon what the law affords. See *Prather v. Colorado Oil & Gas Corp.*, 218 Kan. 111, 117, 542 P.2d 297 (1975); *Jones v. Jones*, 215 Kan. 102, 116, 523 P.2d 743 (1974). "Waiver must be manifested in some unequivocal manner by some distinct act or by inaction inconsistent with an intention to claim forfeiture of a right." *Patrons Mut. Ins. Ass'n v. Union Gas System, Inc.*, 250 Kan. 722, 725-26, 830 P.2d 35 (1992). Thus, in order for a waiver to be constitutionally valid, the record must affirmatively reflect that the defendant personally (1) understood the specific right or rights being waived; and (2) either by action or inaction, established that he or she unequivocally intended to waive the specific right or rights.

The State contends that waiver precludes the court from considering Barnes' motion to correct an illegal sentence under K.S.A. 22-3504(1). Specifically, the State argues that Barnes waived his right to object to the court's use of his prior conviction from Texas in calculating his criminal history score because he failed to lodge an objection to the Texas conviction as part of his criminal history at sentencing.

But the facts here do not establish waiver for the purpose of precluding Barnes from challenging an illegal sentence. Barnes' failure to object to this conviction in his criminal history does not establish Barnes personally knew he was voluntarily and intentionally waiving his right to later ask the court to correct misclassification of a prior conviction as a person offense in his criminal history. The conclusion that waiver does not preclude Barnes from challenging an illegal sentence is consistent with Kansas Supreme Court precedent. In *Dickey*, the court declared that "a stipulation or lack of an

6

objection regarding how those convictions [listed in the criminal history] should be classified or counted as a matter of law for the purpose of determining the defendant's criminal history score will not prevent a subsequent challenge under K.S.A. 22-3504(1) of his or her prior convictions." 301 Kan. at 1032. The same analysis applies here. Barnes did not waive his right to obtain relief from an illegal sentence by failing to lodge an objection to a conviction in his criminal history.

*The merits:  an illegal sentence*

Given the absence of any procedural bar, we turn to the merits of Barnes' claim that the district court erred in classifying his 1978 Texas burglary conviction as a person offense for purposes of calculating his criminal history score, which rendered his sentence illegal.

The method of scoring out-of-state convictions is set out in the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2015 Supp. 21-6801 *et seq*. The first step is to determine whether there is a Kansas statute comparable to the other state's statute that governed the prior conviction. K.S.A. 2015 Supp. 21-6811(e)(3). If no comparable Kansas statute exists, the court must score the out-of-state felony as a nonperson felony. K.S.A. 2015 Supp. 21-6811(e)(3). If a comparable Kansas statute is found, the KSGA directs us to use the statutory version in effect on the date the current crime of conviction was committed. K.S.A. 2015 Supp. 21-6811(e)(3).

At the time Barnes committed his current crime, the Kansas burglary statute provided, in relevant part:

> "Burglary is knowingly and without authority entering into or remaining within any:
> (a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;

(b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexual battery therein; or

(c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexual battery therein.

"Burglary as described in subsection (a) is a severity level 7, person felony." K.S.A. 21-3715.

The Texas burglary statute that forms the basis for Barnes' prior conviction in 1978 provided, in relevant part:

"(a)    A person commits an offense if, without the effective consent of the owner, he:

(1)    enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; or

(2)    remains concealed, with intent to commit a felony or theft, in a building or habitation; or

(3)    enters a building or habitation and commits or attempts to commit a felony or theft.

. . . .

"(c)    Except as provided in Subsection (d) of this section, an offense under this section is a felony of the second degree.

"(d)    An offense under this section is a felony of the first degree if:

(1)    the premises are a habitation; or

(2)    any party to the offense is armed with explosives or a deadly weapon; or

(3)    any party to the offense injures or attempts to injure anyone in effecting entry or while in the building or in immediate flight from the building." Tex. Penal Code Ann. § 30.02 (West 1974).

Texas defined the word "habitation" to mean "a structure or vehicle that is adapted for the overnight accommodation of persons" and "building" to mean "any enclosed

8

structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use." Tex. Penal Code Ann. § 30.01(1), (2) (West 1974).

Considering the Kansas and Texas burglary statutes together, we have no trouble concluding as a matter of law that they are broadly comparable. The question remains, however, as to whether it was proper for the district court to classify Barnes' prior Texas burglary conviction as a person offense under the comparable Kansas burglary statute. In order to resolve this issue, we turn once again to the version of the KSGA in effect at the time of Barnes' current conviction, which explained how prior burglary convictions were to be scored:

> "(d) Prior burglary adult convictions and juvenile adjudications will be scored for criminal history purposes as follows:
> (1) As a prior person felony if the prior conviction or adjudication was classified as a burglary as described in subsection (a) of K.S.A. 21-3715 and amendments thereto.
> (2) As a prior nonperson felony if the prior conviction or adjudication was classified as a burglary as described in subsection (b) or (c) of K.S.A. 21-3715 and amendments thereto." K.S.A. 21-4711(d).

Relying on *Descamps v. United States*, 570 U.S. __, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), Barnes argues the district court erroneously classified his prior conviction from Texas as a person felony under K.S.A. 21-4711(d). Specifically, Barnes argues that classifying his 1978 Texas conviction as a person felony required the district court to make the factual finding that the burglary had been committed in a habitat or dwelling without requiring the State to prove such a fact to a jury beyond a reasonable doubt.

Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. More recently, our

9

Supreme Court explained in *Dickey* that "[t]he constitutional protections described in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), are implicated when a district court, for purposes of enhancing a defendant's sentence for a current conviction, makes findings of fact at sentencing that go beyond merely finding the existence of a prior conviction or the statutory elements that made up the prior conviction." 301 Kan. 1018, Syl. ¶ 7.

In *Descamps*, the United States Supreme Court identified two methods by which a sentencing court can analyze prior convictions without violating *Apprendi*: the categorical approach and the modified-categorical approach. Regardless of which approach is used, the sentencing court ultimately is required to compare the elements of the prior conviction with elements of the generic offense without looking into the facts underlying the prior conviction. *Descamps*, 133 S. Ct. at 2281. Both of these approaches were adopted by the Kansas Supreme Court in *Dickey*, 301 Kan. at 1036-40.

Under the categorical approach, the court looks only at the elements of the two offenses. The court uses the modified-categorical approach when the prior-conviction statute is divisible—in other words, when the statute provides alternative ways of committing the crime. Under the modified-categorical approach, the court can look at a limited set of documents to determine which of the alternatives the defendant was actually convicted of. So, the modified-categorical approach lets the court look at a few underlying facts from the prior conviction, but not for sentencing purposes—only to determine which parts of the prior-conviction statute it should compare to the generic offense. *Descamps*, 133 S. Ct. at 2281.

In this case, we find the Texas burglary statute in effect when Barnes committed his prior crime in 1978 to be divisible because there were alternative versions of the location element in that statute ("habitation or building"), and at least one version of the statute matches the elements of the Kansas statute ("dwelling"). See *State v. Mullens*, 51

10

Kan. App. 2d 1114, 1117, 360 P.3d 1107 (2015) (analyzing 2003 Texas definition of "habitation," which was the same as in 1978, and finding Texas' definition of habitation "clearly fits within the Kansas definition of 'dwelling'"). If Barnes' Texas conviction involved a habitation, the elements would correspond to those of K.S.A. 21-3715(a), burglary of a dwelling. If Barnes' Texas conviction was of a "building" that did not involve a habitation, then it would not include the requisite dwelling element and the court could not classify the prior conviction as a person offense. See K.S.A. 21-4711(d).

Because the Texas statute was divisible, the sentencing court should have used the modified categorical approach to assist its determination of which alternate version (habitation or building) served as the basis of Barnes' prior conviction. Notably, the court was not asked to conduct any analysis of the Texas burglary conviction. Rather, it classified Barnes' Texas burglary conviction as a person felony and sentenced him accordingly. Under *Dickey*, the court was constitutionally prohibited from classifying Barnes' prior burglary conviction as a person felony without determining which version Barnes was convicted under because, in doing so, the court necessarily made a factual finding that went beyond simply identifying the statutory elements in the prior Texas burglary statute. See *State v. Lewis*, No. 113,438, 2016 WL 1546133, at *1 (Kan. App. 2016) (unpublished opinion) (after comparing the 1978 Texas burglary statute to K.S.A. 21-3715 with regard to the "habitation" or "building" element, remand was proper "so that the district court can review the appropriate documents to ensure that Lewis was indeed convicted in 1978 of burglary of a habitation under Texas law").

For the reasons stated above, we must vacate Barnes' sentence and remand for further proceedings to determine whether Barnes' 1978 Texas conviction for burglary would fit within Kansas' definition of burglary of a dwelling at the time he was convicted of his current crime. At resentencing, the district court may examine documents related to Barnes' 1978 Texas burglary conviction for purposes of determining the nature of the offense, including charging documents, plea agreements, jury instructions, verdict forms,

and transcripts from plea colloquies as well as findings of fact and conclusions of law from any bench trial. See *Dickey*, 301 Kan. at 1038. If the district court is unable to determine the basis of the Texas burglary conviction, then the Texas burglary conviction must be classified as a nonperson felony.

Sentence vacated and case remanded with directions.

* * *

GARDNER, J., dissenting: Barnes' sole claim of error is that the district court erred "by concluding that Barnes' prior crime was for 'burglary of a dwelling' without limiting its examination to the permissible documents identified in *Dickey*." I would find that the district court properly scored Barnes' 1978 conviction in Texas for "burglary of habitat" as a person felony by relying on the presentence investigation report (PSI).

Barnes' PSI listed his Texas burglary conviction not as "burglary," but as "burglary of habitat." Barnes reviewed his PSI before he was sentenced. Although Barnes raised objections to other prior convictions listed in the PSI, he did not raise any objection to his Texas burglary conviction for "burglary of habitat." Barnes thus admitted the existence of that conviction. See K.S.A. 21-4715(a), recodified in K.S.A. 2015 Supp. 21-6814(a) (providing that the defendant's criminal history "shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge"). The district court relied on defendant's admission of that crime in sentencing him.

The State does not argue invited error or waiver, but correctly contends the district court properly relied on the fact of Barnes' convictions listed on his PSI, then made the legal conclusion that Barnes' Texas burglary conviction for "burglary of habitat" involved a dwelling, thus properly determining it to be a person crime. See *State v. Moore*, 52 Kan.

12

App. 2d 799, 805, __P.3d__ (2016) ("[I]f the prior conviction involved burglary of a dwelling, it's a person crime, and if it didn't involve a dwelling, it's a nonperson crime. K.S.A. 2015 Supp. 21-6811(d); *State v. Cordell*, 302 Kan. 531, 534, 354 P.3d 1202 [2015].").

As Barnes concedes, our court has held that Texas' definition of "habitation" fits within Kansas' definition of "dwelling." *State v. Mullens*, 51 Kan. App. 2d 1114, 1117, 360 P.3d 1107 (2015). Barnes does not contend that Kansas' burglary of a dwelling statute, K.S.A. 21-3715(a), was not the closest approximation of the Texas statute for burglary of habitat. Because the Texas and Kansas burglary statutes are comparable as a matter of law, the State contends the district court did not make *any* factual determinations in classifying Barnes' Texas crime as a person felony. But that conclusion presumes the district court properly relied on the fact of conviction stated in Barnes' PSI. The unstated issue underlying both Barnes' and the State's arguments is whether the district court may rely on the prior crime as listed in the defendant's PSI in determining prior criminal history without running afoul of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), as applied and interpreted in *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015).

Barnes contends that the district court failed to limit its examination to the permissible documents identified in *Dickey*:

> "Thus, without running afoul of *Apprendi,* a sentencing court is permitted to look beyond the elements of the statute and examine a limited class of documents to determine 'which of a statute's alternative elements formed the basis of the defendant's prior conviction.' 133 S. Ct. at 2284. Such documents include charging documents, plea agreements, jury instructions, verdict forms, and transcripts from plea colloquies as well as findings of fact and conclusions of law from a bench trial. *Johnson v. United States*, 559 U.S. 133, 144, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010)." *Dickey*, 301 Kan. at 1037-38.

13

But *Dickey*'s list of "included" documents is, as it says, exemplary rather than exclusive. See *Yates v. United States*, 574 U.S. __, 135 S. Ct. 1074, 1097 n.5, 191 L. Ed. 2d 64 (2015) (Kagan, J, dissenting) (noting "includes," following its ordinary definition, "is not exhaustive"). *Dickey*'s citation to *Johnson* confirms that conclusion, as *Johnson* stated its reliance on the following cases—whose lists of approved documents vary from *Dickey*'s: *Chambers v. United States*, 555 U.S. 122, 126, 129 S. Ct. 687, 172 L. Ed. 2d 484 (2009) (stating the "sentencing court may look, *for example*, to charging document, plea agreement, jury instructions, or transcript of plea colloquy to determine crime at issue") (Emphasis added.); *Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005) (plurality opinion) (finding in ACCA cases the sentencing court "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, *or to some comparable judicial record of this information*") (Emphasis added.); *Taylor v. United States*, 495 U.S. 575, 602, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990) (listing only the statutory definitions, the charging papers, and the jury instructions); see also *Shepard*, 544 U.S. at 16 (stating its holding as "that a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, *and any explicit factual finding by the trial judge to which the defendant assented*") (Emphasis added.). Thus a sentencing court in conducting a modified categorical review may look at certain documents not listed in *Dickey*, without violating *Dickey* or *Apprendi*.

Our prior cases have recognized that the approved documents, known as "*Shepard* documents*," include "the statutory definition [of the offense of the prior conviction], charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *State v. Gonzalez*, 282 Kan. 73, 117, 145 P.3d 18 (2006) (reciting that list of *Shepard* documents in ruling that *Ivory's* holding remains good law); *State v. Jones*, No. 99,803, 2009 WL 1140272 (Kan.

14

App. 2009) (unpublished opinion) (reciting that list of *Shepard* documents in finding one of them established that Jones had burglarized homes, thus the district court could not have violated *Apprendi,* as interpreted and applied by *Shepard*). Thus in conducting a modified categorical approach, the sentencing court can review "any explicit factual finding by the trial judge to which the defendant assented." *Gonzalez*, 282 Kan. at 117.

Barnes reviewed his PSI prior to sentencing. He challenged other crimes at sentencing but did not challenge the existence of his 1978 Texas conviction for "burglary of habitat" listed in his PSI. Accordingly, he admitted the fact of his prior conviction of that crime. The district court explicitly found that Barnes had committed the crime of "burglary of habitat" by using that crime, among others, to establish Barnes' criminal history for purposes of sentencing. Under these circumstances, the PSI's listing of Barnes' prior crimes is a permissible *Shepard* document. See *Gonzalez*, 282 Kan. at 117 (permitting the sentencing court to review "any explicit factual finding by the trial judge to which the defendant assented").

Therefore, a district court, in using a modified categorical approach, can rely on the unchallenged criminal history convictions listed in the PSI. Although Kansas courts have not yet addressed this narrow issue, *Dickey* held that "a defendant's stipulation or failure to object at sentencing will prevent the defendant from later challenging the existence of convictions listed in his or her criminal history." *Dickey*, 301 Kan. at 1032. That language expressly refers to the criminal history listed in the defendant's PSI and so bars Barnes' challenge now.

Federal courts which have addressed this very issue permit the district court to rely on the PSI as a "*Shepard* document" when conducting a modified categorical review of prior crimes. For example, in addressing the argument that a prior conviction did not qualify as a "crime of violence" because the *Shepard* documents did not prove that the defendant burglarized a generic "dwelling," the Eleventh Circuit held:

15

"Accordingly, we assume *arguendo* that it is appropriate to consider the *Shepard* documents . . . . The primary evidence before the district court indicating that [defendant's] prior conviction involved the burglary of a residence was the PSI. As noted above, we have held that a sentencing court applying the modified categorical approach may consider undisputed facts contained in the PSI. *Bennett*, 472 F.3d at 834." *United States v. Ramirez-Flores*, 743 F.3d 816, 824 (11th Cir. 2014), *cert. denied* 135 S. Ct. 948, 190 L. Ed. 2d 843 (2015).

The court concluded that the defendant "failed to object to the PSI's statement that the conduct underlying his South Carolina burglary conviction involved entry into the victim's residence. Because the district court properly relied upon that fact as undisputed, [defendant's] argument that his prior conviction may not have involved generic burglary fails." *Ramirez-Flores*, 743 F.3d at 824.

Accordingly, in determining the nature of a prior conviction, the district court may make findings of fact based on undisputed convictions listed in the PSI. See *United States v. McCloud*, 818 F.3d 591, 595-96 (11th Cir. 2016) (finding the district court, in determining the nature of a prior conviction, may make findings of fact based on undisputed statements in the PSI, but may not rely on those portions to which the defendant objected "with specificity and clarity," unless the Government establishes the disputed facts by a preponderance of the evidence); *United States v. Bennett*, 472 F.3d 825, 832, 33-34 (11th Cir. 2006) (per curiam) (finding for purposes of classifying the defendant as an armed career criminal, "the PSI, together with the addendum to the PSI, indicated that court documents of [the defendant's] prior burglaries showed that his burglaries were of either residential or commercial buildings" and, thus, qualified violent felonies as generic "burglary"); *United States of America v. Charlie James Stevens*, No. 15-11518, 2016 WL 3611540, at *2 (11th Cir. 2016) (unpublished opinion) (applying the modified categorical approach to determine which of the alternative crimes stated in the statute formed the basis for defendant's conviction; finding "the undisputed facts in

16

Stevens' PSI show that Stevens was convicted under Georgia law of possession with intent to distribute marijuana [not mere possession of marijuana]").

There is no constitutional or practical unfairness in this. Barnes' prior convictions listed on the PSI were themselves initially established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees. And their inclusion in the PSI was also subject to procedural safeguards at the time of Barnes' sentencing which required the State to prove those crimes unless Barnes admitted them. See K.S.A. 21-4715(a), recodified in K.S.A. 2015 Supp. 21-6814(a) (providing that the defendant's criminal history "shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge"). The PSI itself is subject to the same evidentiary requirements as other exhibits admitted in court. *Cf. State v. Kralik*, 32 Kan. App. 2d 182, 80 P.3d 1175 (2003). Thus the crimes listed in the PSI, once admitted by the defendant or proved by the State, bear the indicia of reliability common to other *Shepard* documents.

Those procedural safeguards underlie *Apprendi*'s exemption of "the fact of a prior conviction" from its requirement that facts increasing the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 490. *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), teaches that any due process or Sixth Amendment concerns—arising out of the judicial determination of a fact of a prior conviction that increases punishment beyond the statutory maximum—are mitigated by both the certainty that procedural safeguards are attached to any fact of prior conviction, and the reality that the defendant did not challenge the accuracy of that fact in his or her case. 530 U.S. at 488. The Kansas Supreme Court has cited that reasoning favorably. *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002).

The same procedural safeguards underlie *Dickey*'s holding that a defendant's failure to object at sentencing will prevent the defendant from later challenging the existence of convictions listed in his or her criminal history. As *Dickey* explained: "A narrow exception exists for judicial factfinding regarding the existence of a prior conviction because of the procedural safeguards which attach to such a fact." 301 Kan. at 1036. *Apprendi* is implicated when a district court sentences above the statutory maximum by "mak[ing] findings of fact at sentencing that go beyond merely finding the existence of a prior conviction or the statutory elements that made up the prior conviction. *Descamps*, 133 S. Ct. at 2288-89." 301 Kan. at 1036. The district court did not do so here.

The underlying purpose of conducting a modified categorical approach is to determine the nature of the offense of which the defendant was convicted, rather than to determine what he actually did. What better source than the PSI to make that determination? See *Shepard*, 544 U.S. at 23 (relying on the conclusion from *Taylor v. United States*, 495 U.S. 575, 599, 110 S. Ct. 2143, 109 L. Ed. 2d 607 [1990], that respect for congressional intent and avoidance of collateral trials requires that "evidence of generic conviction be confined to records of the convicting court approaching the certainty of the record of conviction in a generic crime State"). The PSI's listing of a defendant's prior crimes, once those crimes have been admitted by the defendant and relied upon by the district court in sentencing, as here, achieves that level of certainty.

No evidence suggests the district court considered any non-*Shepard* documents to determine that Barnes' 1978 Texas conviction for "burglary of habitat" was a person crime. The district court had no need to do so—it could make that determination as a matter of law by reviewing the criminal history that Barnes admitted to as listed in his PSI and applying *Mullens*' finding that Texas' definition of "habitation" fits within Kansas' definition of "dwelling." Making a legal conclusion does not constitute judicial factfinding and thus cannot violate *Apprendi.*

18

To remand this case because the Texas statute permits a defendant to be convicted either of "burglary of building" or of "burglary of habitat," would, under the circumstances here, require the district court to do a futile act. We are finding that the district court erred by relying on the criminal convictions listed in Barnes' PSI, but we are remanding so the district court can conduct a modified categorical approach by examining "*Shepard* documents"—documents which include the prior convictions listed in Barnes' PSI and established by his admission. The law does not require the doing of a futile act. See *State v. Denney*, 283 Kan. 781, 787, 156 P.3d 1275 (2007). Neither should we.

I would affirm.