[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14547

_____

D.C. Docket No. 1:14-cr-20353-KMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIE MCCLOUD,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 16, 2016)

Before WILSON and JULIE CARNES, Circuit Judges, and HALL,[*] District

Judge.

WILSON, Circuit Judge:

Willie McCloud pleaded guilty to being a convicted felon in possession of a

firearm that traveled interstate, in violation of 18 U.S.C. § 922(g)(1).  This

conviction, coupled with his three prior convictions for armed robbery, made

possible his qualification as an armed career criminal.  *See* 18 U.S.C. § 924(e).

The federal crime of possessing a firearm by a convicted felon generally carries no

mandatory minimum penalty and the statutory maximum sentence is 10-years

imprisonment.  *See id.* § 924(a)(2).  However, the Armed Career Criminal Act

(ACCA) imposes a mandatory minimum sentence of 15-years imprisonment when

a defendant has committed three prior qualifying offenses "on occasions different

from one another."  *See id.* § 924(e)(1).

The district court determined that McCloud's three prior armed robbery

convictions were committed on separate occasions, thereby rendering McCloud

subject to the ACCA's 15-year statutory minimum.[1]  *See id.*  The court then

---

[*] Honorable James Randal Hall, United States District Judge for the Southern District of Georgia, sitting by designation.

[1] McCloud previously was convicted of committing three armed robberies and third-degree grand theft.  The Presentence Investigation Report (PSI) does not identify which of the four offenses were relied upon in recommending McCloud's classification as an armed career criminal.  The parties agree that McCloud's armed robbery convictions qualify as "violent felon[ies]" within the meaning of 18 U.S.C. § 924(e)(2)(B).  Because the Government neither briefed nor argued that third-degree grand theft is a "violent felony" upon which an armed career

imposed a 235-month sentence, which was at the top of the range recommended by the United States Sentencing Guidelines (the Guidelines) and exceeded the Government's request by 40 months.  This appeal followed.

We are called upon to determine whether the Government carried its burden in proving McCloud is an armed career criminal under the statute.  After thorough review of the parties' briefs and having had the benefit of oral argument, we conclude that the district court erred in determining McCloud's three prior offenses were separate within the meaning of the ACCA.[2]  We therefore vacate the district court's sentencing order and remand for sentencing consistent with this opinion.

I

For a defendant to receive the 15-year minimum sentence under 18 U.S.C. § 924(e)(1), the Government must prove by a preponderance of the evidence, using "reliable and specific evidence," *see United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012), that the defendant's prior convictions each "arose out of a separate and distinct criminal episode," *United States v. Sneed*, 600 F.3d 1326,

---

criminal status could be based, that argument has been waived and we offer no opinion on that issue.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).  Accordingly, whether McCloud qualifies as an armed career criminal rests on whether the conduct underlying his three prior convictions for armed robbery occurred on occasions different from one another.

[2] Because we conclude McCloud is not subject to the ACCA mandatory minimum sentence, leading us to remand for resentencing, we need not address whether McCloud's prior sentence was procedurally or substantively unreasonable.  Additionally, although McCloud raised a constitutional challenge to his conviction under 18 U.S.C. § 922(g)(1), this argument is squarely foreclosed by our precedent.  *See United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996).

1329 (11th Cir. 2010) (internal quotation marks omitted). To qualify as separate under the ACCA, the predicate crimes must be "successive rather than simultaneous"—in other words, "temporally distinct." *See United States v. Weeks*, 711 F.3d 1255, 1261 (11th Cir. 2013) (per curiam) (internal quotation marks omitted). A crime is "successive" when the defendant had "a meaningful opportunity to desist . . . activity before committing the second offense" and "the crimes reflect[] distinct aggressions." *United States v. Lee*, 208 F.3d 1306, 1307 (11th Cir. 2000) (per curiam) (first alteration in original) (internal quotation mark omitted). Thus, distinctions in the timing and location of the events in question are central to the determination that they are "separate and distinct criminal episodes." *See Sneed*, 600 F.3d at 1333; *Weeks*, 711 F.3d at 1261.

To determine the nature of a prior conviction, the district court is "limited to examining the statutory definition [of the offense of the prior conviction], charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *United States v. Shepard*, 544 U.S. 13, 16, 125 S. Ct. 1254, 1257 (2005). These documents are known as "*Shepard*-approved sources" or "*Shepard* documents." *See, e.g.*, *Weeks*, 711 F.3d at 1259–60. Police reports and arrest affidavits may not be used to determine whether ACCA predicate offenses occurred on separate occasions. *Sneed*, 600 F.3d at 1333. The district court may make findings of fact based on

4

undisputed statements in the PSI, but may not rely on those portions to which the defendant objected "with specificity and clarity," unless the Government establishes the disputed facts by a preponderance of the evidence. *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013) (per curiam); *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006) (per curiam).

Both in his objections to the PSI and at sentencing, McCloud argued that the *Shepard* documents did not support the Government's contention that his prior crimes were separate within the meaning of the ACCA. On appeal, McCloud asks us to review whether the Government failed to carry its burden of proving that the armed robberies were offenses "occurring on occasions different from one another" using *Shepard*-approved materials. "We review de novo whether crimes were committed on occasions different from one another within the meaning of the ACCA." *Weeks*, 711 F.3d at 1261.

II

McCloud contends that the Government failed to meet its burden of proof because the *Shepard* documents do not state the time and location of his prior convictions, or otherwise indicate that the offenses were "temporally distinct." *See id.*; *Almedina*, 686 F.3d at 1315. The *Shepard* documents in this case include the charging documents for each armed robbery, the transcript of the plea colloquy,

and undisputed statements in the PSI.[3]  McCloud's arrest affidavits are not

*Shepard* documents.  *See Sneed*, 600 F.3d at 1333 (holding that "courts may not

use police reports to determine whether predicate offenses under § 924(e)(1) were

committed on 'occasions different from one another.'"); *cf. United States v.*

*Rosales-Bruno*, 676 F.3d 1017, 1022–23 (11th Cir. 2012) (explaining that arrest

affidavits lack "indicia of reliability sufficient to meet *Shepard*'s requirements").

We review, in turn, the charging documents, plea colloquy transcript, and

undisputed portions of the PSI to determine if these documents provide reliable

and specific evidence reflecting that McCloud's prior convictions more likely than

not arose out of "separate and distinct criminal episode[s]."  *See Sneed*, 600 F.3d at

1329 (internal quotation marks omitted).  When it is equally likely that the crimes

were committed simultaneously as it is that they were committed successively, the

Government has not met its evidentiary obligation under the preponderance of the

evidence standard.

We conclude that, although the charging documents reflect there were three

different victims, different items stolen, and three different case numbers, these

pieces of information do not make it more likely than not that the crimes were

committed successively rather than simultaneously.  In addition, although the

charging documents reflect the varying participation of McCloud's co-defendants,

---

[3] There is no written plea agreement in this case.

6

they do not state in what order the robberies occurred or make it more likely than not that there was a meaningful opportunity to desist the criminal activity. Similarly, the plea colloquy transcript and undisputed paragraph of the PSI indicate—at most—two separate offenses occurred. Thus, whether taken individually or collectively, the *Shepard* documents do not support the conclusion that the robberies occurred on occasions different from one another.

## A.  The Charging Documents

The Government concedes that the charging documents do not specify the time or location at which each of the three prior robbery convictions occurred. However, the Government argues, the charging documents do reflect that there were three separate case numbers assigned to McCloud's offenses on August 4, 2008, that McCloud and his fellow perpetrators stole from three differently named individuals that day, that the property stolen was of three different types, and that the offenses were committed with different co-defendants. The Government urges us to conclude from this information that it is more likely than not that the armed robberies were separate within the meaning of the ACCA.

That the charging documents indicate there were unrelated victims and different items stolen does not constitute "reliable and specific evidence" pertaining to the time and location of the offenses, or otherwise indicate that there was a meaningful break between the offenses. We would not consider three

7

temporally and logistically distinct robberies of the same victim to be a single offense.  Correlatively, we do not consider—without more evidence—three different victims to indicate that the offenses were temporally or logistically distinct.  Similarly, whether the pieces of property stolen were of the same or different types does not indicate the time or place of events.  On the face of the charging documents, it is plausible that all three victims were standing in the same location, and each simultaneously gave up the items of value in his pockets.  Thus, that there were different victims and the items stolen were two gold chains, one cell phone, and one wallet provides no indication whether the thefts were committed successively rather than simultaneously.  *See Weeks*, 711 F.3d at 1261; *United States v. Pope*, 132 F.3d 684, 692 (11th Cir. 1998).

The Government also argues that having three different case numbers in the state court informations provides "reliable and specific evidence" that the offenses were committed separately.  However, the individual case numbers themselves do not convey any information pertaining to the time or location of the offenses.  It is just as likely that there are three case numbers to reflect the number of victims as it is that there are three case numbers to reflect three separate events.  Accordingly, the mere fact that the case numbers are different does not assist the Government in meeting its burden of proving with reliable and specific evidence that the offenses

8

are "separate and distinct criminal episode[s]" within the meaning of the ACCA. *See Sneed*, 600 F.3d at 1329, 1333 (internal quotation marks omitted).

Lastly, the Government suggests that we may reasonably conclude the offenses were separate because they involved different co-defendants. The Government's theory is that, because McCloud was joined by two co-defendants in the commission of two offenses but only one co-defendant in the other offense, there was "a meaningful opportunity to desist . . . [the criminal] activity," and therefore, the ACCA should apply even if the crimes were temporally and physically proximate. *See Pope*, 132 F.3d at 689–90; *United States v. Spears*, 443 F.3d 1358, 1360 (11th Cir. 2006) (per curiam). The problem with this argument, though, is that instead of resting on "reliable and specific evidence," it requires us to speculate in order to conclude that there was a break in the events. We are not persuaded by the suggestion that the participation of certain co-defendants delineates the order of each armed robbery. It is possible that McCloud and both co-defendants committed the first robbery; McCloud and one co-defendant committed the second robbery; and then McCloud and both co-defendants committed the third robbery. If true, this could reflect three separate offenses. However, it is *equally plausible* that McCloud and his two co-defendants committed the first two offenses together, simultaneously, and then McCloud and only one co-defendant committed the third offense. This would indicate only two

separate offenses.  Moreover, it is also *equally plausible* that McCloud committed all three robberies simultaneously, with varying amounts of participation from his colleagues.  This would indicate only one criminal episode.  Consequently, without any information pertaining to the time or location of events, the fact that McCloud did not have assistance from both co-defendants during the commission of all three robberies does not assist the Government in proving, by a preponderance of the evidence, that the three offenses were separate.

Thus, the charging documents do not contain reliable and specific evidence reflecting that McCloud's ACCA predicate offenses were three separate and distinct criminal episodes.

### B.  The Plea Colloquy Transcript

The plea colloquy transcript does not demonstrate that the three prior convictions occurred on occasions different from one another.  Indeed, the Government conceded at sentencing that "there's not a whole lot" in the plea colloquy transcript.  We agree.  At most, the transcript establishes two separate offenses.

The district court found persuasive three pieces of evidence in the transcript: (1) when the sentencing judge asked the prosecutor what the State would have proven had the case gone to trial, the prosecutor identified the location of one of the robberies, with citation to Case Number F0828463(A); (2) the sentencing judge

10

told McCloud "you were busy that day"; and (3) the sentencing judge told McCloud he would have "significant court costs on each case, $733 on each case."[4]  However, only the first piece of evidence assists the Government in attempting to meet its burden.

The Government urges us to infer from the plea colloquy that, because the prosecutor identified the address of one prior offense, the other two offenses occurred at locations different from not only that address but also one another.  But the plea colloquy contains no reference to the addresses where the other offenses occurred.  The mere identification of the location of one robbery does not demonstrate that the other robberies occurred at different locations.[5]  Thus, the plea colloquy does not contain reliable and specific evidence reflecting that McCloud's ACCA predicate offenses were three separate and distinct criminal episodes.

C.  Undisputed Parts of the PSI

Lastly, we turn to the undisputed portions of the PSI to help us determine whether the agreed-upon paragraphs contain "reliable and specific evidence" that the prior offenses were separate.  The Government contends that it should be

---

[4] We have specifically held that the crimes need not be charged in separate indictments in order to be considered separate under the ACCA. *See United States v. Jackson*, 57 F.3d 1012, 1018 (11th Cir. 1995).  It follows that no probative value attaches to the fact that there were separate court costs for each offense charged.

[5] In fact, the prosecutor states on the record that the offenses all occurred within the same county.  If we were to look at this material and draw inferences, as the Government insists we should, then that statement cuts *against* the suggestion that the other two offenses occurred at locations different from one another.

11

permitted to rely on paragraphs 27, 28, 29, and 30 of the PSI, which expressly incorporate McCloud's arrest records, because McCloud either failed to object or did not enter a proper objection to the use of those paragraphs.[6] McCloud accepts that he did not object to paragraph 29, but argues that he did enter a proper objection to the other paragraphs on the basis of their incorporation of non-*Shepard* documents.

We have long held that "challenges to the facts contained in the PSI must be asserted with specificity and clarity." *See Bennett*, 472 F.3d at 832. A defendant makes a proper objection when he identifies the specific PSI paragraphs to which he objects and states that the reason for his objection is that the source of those facts is a particular non-*Shepard* document. *See United States v. Schneider*, 681 F.3d 1273, 1276–77 (11th Cir. 2012); *Bennett*, 472 F.3d at 833; *cf. Rosales-Bruno*, 676 F.3d at 1023–24. The Government may not avoid *Shepard* and *Sneed* by claiming that an explicit objection to PSI paragraphs that incorporate the facts of a non-*Shepard* document is insufficient when the defendant unambiguously and specifically objects to the source of the factual material. *See also Sneed*, 600 F.3d at 1331–33 (discussing the principles that underpin *Shepard* and guide the application of its rule).

---

[6] Paragraphs 27, 28, 29, and 30 of the PSI each state: "According to the arrest affidavit . . . ."

Turning to the facts before us, we conclude that the Government may rely on paragraph 29 of the PSI, but may not rely on paragraphs 27, 28, and 30. McCloud filed no objection to paragraph 29, which makes those facts undisputed and available to the Government, despite the express incorporation of a non-*Shepard* source. *See Bennett*, 472 F.3d at 832. However, McCloud validly objected to the use of paragraphs 27, 28, and 30, and the Government may not rely on the content of those paragraphs to prove the offenses are separate. McCloud's objection specifically identified those paragraphs he disputed—paragraphs 27, 28, and 30— and clearly stated that his objection stemmed from the source of those facts being an arrest affidavit, which is a non-*Shepard* document. This objection is sufficiently specific and clear to satisfy *Bennett* and render the paragraphs "disputed." *See id.* at 829. Unlike the facts of *Bennett*, however, the Government here has not argued and the record does not reflect that the facts stated in paragraphs 27, 28, and 30 were available in other *Shepard*-approved sources that the Government provided to McCloud on discovery. *Cf. id.* at 833. Therefore, McCloud properly disputed those paragraphs in the PSI and the Government may not rely on them to prove that McCloud's prior convictions constitute separate offenses under the ACCA.

Paragraph 29 conveys details pertaining to McCloud's conviction for third-degree grand theft. Specifically, that paragraph states:

13

> According to the arrest affidavit, on August 4, 2008, a BOLO was issued for two armed robberies involving a green Nissan Altima occupied by three black males. Law enforcement officers observed the vehicle, bearing Florida license plate number ██████, driven by the defendant. As the officer attempted to stop the vehicle, he noticed the defendant absconding from the area. The defendant was taken into custody. A records check revealed that the vehicle was stolen on August 2, 2008.

The Government reads this paragraph to support its conclusion that "the three armed robberies occurred at different locations" because "[t]he use of a vehicle in conjunction with the armed robberies by all three defendants further indicates that the defendants, including McCloud, were traveling between locations together to find their victims." We find no statements to that effect in paragraph 29. Rather, Paragraph 29 indicates only that, at the time the police were looking for the perpetrators of "two armed robberies involving a green Nissan Altima occupied by three black males," an officer observed McCloud driving a vehicle matching that description, and after apprehending him, learned the car had been stolen two days prior.

Thus, Paragraph 29 does not contain "reliable and specific evidence" reflecting that the three convictions for armed robbery were "separate and distinct criminal episodes." The paragraph ties McCloud to the commission of *two* armed robberies, confirms that those robberies occurred on August 4, and adds that a vehicle was involved in the commission of those robberies. It neither states that

14

the two armed robberies occurred at different locations nor indicates that McCloud and his co-defendants "were traveling between locations together to find their victims." This paragraph leaves it just as likely as not that all three robberies occurred simultaneously, but only two victims had reported the crime at the time the officers began looking for the green Nissan Altima. Moreover, the paragraph provides no information as to *which* of the two armed robberies were committed in connection with the stolen car or *who* was in the car with McCloud at the time of his arrest, rendering it of negligible value even when combined with the other *Shepard* documents.

*        *        *

Thus, the charging documents, plea colloquy transcript, and paragraph 29 of the PSI do not provide "reliable and specific evidence" reflecting three violent felonies that McCloud "committed on occasions different from one another." *See* 18 U.S.C. § 924(e)(1); *Almedina*, 686 F.3d at 1315. Because the documents are vague as to which offense(s) they relate, even when taken collectively they do not satisfy the Government's evidentiary obligations.

No other *Shepard* documents are in the record to assist the Government in proving, by a preponderance of the evidence, that McCloud's prior offenses were separate within the meaning of the ACCA. Therefore, the burden of showing

15

McCloud is an armed career criminal is not met, and the district court erroneously applied the 15-year ACCA sentencing enhancement.

IV

In light of the foregoing, we vacate McCloud's current sentence and remand to the district court for resentencing consistent with this opinion.

**VACATED and REMANDED**.