[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13166
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cr-00180-HLA-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEENAN DEVRON HUNTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 26, 2018)

Before TJOFLAT, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

Keenan Hunter appeals his 92-month sentence after pleading guilty to one

count of being a felon in possession of a firearm, in violation of 18 U.S.C.

§ 922(g)(1).  On appeal, Hunter first argues that his sentence is procedurally and substantively unreasonable because the district court improperly considered disputed facts at sentencing without requiring the government to prove those facts by a preponderance of the evidence.  Hunter also argues that his two prior drug convictions under Florida Statute § 893.13 do not qualify as controlled substance offenses under the Sentencing Guidelines.  After careful review of the record and the parties' briefs, we affirm in part and vacate and remand in part.

## I. BACKGROUND

On April 26, 2016, Hunter was involved in a minor automobile accident with a woman he knew.  When the woman insisted on calling the police, Hunter allegedly exited his vehicle, lifted his shirt to display a firearm, and made a threatening statement, after which Hunter returned to his vehicle and left the scene. As a result of this incident, authorities issued a warrant for Hunter's arrest.

Four months later, on September 16, 2016, detectives from the Jacksonville Sheriff's Office executed that warrant.  During the arrest, the detectives discovered a loaded handgun in Hunter's waistband.  A federal grand jury later indicted Hunter on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Hunter pled guilty.

## A.    Presentence Report

Prior to sentencing, a probation officer prepared Hunter's presentence report ("PSR").  The PSR assigned Hunter a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) because Hunter had two prior felony convictions for a controlled substance offense.  Specifically, Hunter had (1) a 2008 Florida conviction for sale or delivery of cocaine, in violation of Fla. Stat. § 893.13(1)(a)(1), and (2) a 2009 Florida conviction for sale, manufacture, delivery, or possession with intent to deliver cocaine within 1,000 feet of a convenience business, in violation of Fla. Stat. § 893.13(1)(e).  Hunter also received (1) a two-level increase under U.S.S.G. § 2K2.1(b)(4)(A) because the firearm was stolen, and (2) a three-level decrease under U.S.S.G. § 3E1.1(a)-(b) for his acceptance of responsibility, resulting in a total offense level of 23.

Hunter was assigned a criminal history category of VI, based on a criminal history score of 14.  Hunter received one criminal history point for each of the following prior convictions: (1) a 2008 conviction for possession of less than 20 grams of cannabis; (2) a 2009 conviction for trespass and giving a false name; (3) a 2009 conviction for possession of less than 20 grams of cannabis; (4) a 2010 conviction for possession of less than 20 grams of cannabis; (5) a 2010 conviction for possession of controlled substance paraphernalia and possession of less than 20 grams of cannabis; (6) a 2012 conviction for possession of cocaine; (7) a 2013

3

conviction for driving with a suspended license and possession of less than 20 grams of cannabis; (8) a 2013 conviction for use or possession with intent to use drug paraphernalia; and (9) a 2013 conviction for resisting an officer without violence and possession of not more than 20 grams of marijuana.  Hunter also received two criminal history points each for: (1) his 2008 conviction for sale or delivery of cocaine; and (2) a 2014 conviction for resisting an officer without violence.  Finally, Hunter received three criminal history points each for: (1) his 2009 conviction for sale, manufacture, delivery, or possession with intent to deliver cocaine within 1,000 feet of a convenience business; and (2) a 2010 conviction for fleeing and attempting to elude a law enforcement officer, driving without a valid license, and resisting an officer without violence.[1]

In addition to these scored convictions, the PSR also listed several unscored prior convictions, a number of prior criminal offenses for which the charges were dropped, dismissed, or otherwise not prosecuted, and one charge on which Hunter was acquitted.  Of relevance to this appeal, paragraph 59 of the PSR described the above April 2016 car accident discussed above, for which Hunter was charged in state court with these two offenses: (1) improper exhibition of a firearm or dangerous weapon, and (2) criminal mischief.  Both state charges were later

---

[1]Although Hunter had nine prior convictions that received one criminal history point each, only a maximum of four could be counted under U.S.S.G. § 4A1.1(c) in calculating his criminal history score.  Accordingly, though Hunter technically had a total of 19 criminal history points based on his prior scored convictions, only 14 of those points were counted in determining his criminal history category of VI.

dropped.  **[Id.]**  Hunter thus had no convictions based on the April 2016 car incident.

Based on his total offense level of 23 and criminal history category of VI, the PSR calculated Hunter's advisory guidelines range as 92 to 115 months' imprisonment.  Hunter's offense carried a statutory maximum term of 120 months (10 years).

## B.    Hunter's Written Objections to the PSR

Hunter filed several objections to the PSR.  Among other things, Hunter objected to: (1) the factual narratives contained in paragraphs 27, 39, and 43, "insofar as they include any facts relating to dropped or dismissed counts"; (2) the factual narrative in paragraph 46 because the facts related to a charge for which he was acquitted at trial; and (3) the factual narrative in paragraph 57 because the charges in that case were dropped and, as such, there were no factual findings by a court or any factual basis agreed to by Hunter, making the factual statements in the PSR unreliable.

Hunter did not object, however, to the factual narrative contained in paragraph 59, which described the April 16 car incident.  Hunter likewise did not object to the calculation of his base offense level based on his two prior sale of cocaine convictions.

## C.    Sentencing Hearing

At sentencing, the district court first reviewed the PSR's guidelines calculations, noting that Hunter's criminal history score of 14 was "one of the highest" it had ever seen.  The district court then reviewed Hunter's written objections to the PSR.  Regarding the disputed factual narratives in the PSR, Hunter stressed that those narratives related to dropped charges or acquittals as follows:

> The other objections that we have are—and that Your Honor has already said that you've seen, are objections to factual narratives relating to dropped counts, dismissed counts, or acquittals that we don't think should be included.
>
> Based on the fact that they're dropped or dismissed or acquitted counts or cases, we don't believe that there is any factual reliability for them to be included or for them to be considered by the Court in terms of the Court's—so we would just maintain our objections as laid out, obviously in the—our objections to the PSR that Your Honor has already seen.
>
> But I don't believe that we would need to have any individual argument other than maintaining our objections.

The district court overruled Hunter's objection, stating: "As I've indicated, I've considered that the defendant has 14 criminal history points.  I think that's all that's considered by the Court."  And those 14 points were all based on convictions, not arrests or dropped charges.

The government then argued for a middle-of-the-range sentence based on Hunter's extensive criminal history and apparent inability to "live by the rules." The district court agreed that "[f]or somebody 26 years old to be at a criminal

6

history points of 14 points is really amazing, bad," but also noted that none of Hunter's prior convictions "ha[d] been for any violence."  The district court further stated: "Ordinarily on a 26-year-old man, I would think a sentence that's set by the guidelines in this case is unreasonably high, but in this case, I'm not sure about that.  I think the sentence may be reasonable."

Hunter argued that a sentence within the advisory guidelines range would be unreasonable in his case.  He emphasized, among other things, that none of his prior convictions demonstrated a history of violence, that for the last few years he had made sincere efforts to change his life, and that his recent convictions were fewer and only misdemeanors.  Hunter argued these factors and others warranted a downward variance in his case.

In response, the district court expressed concern about the factual circumstances underlying Hunter's September 2016 arrest for the April 2016 car incident and noted that it was "the arrest that started this prosecution."  The district court stated:

> I tried to figure out why you were objecting to these arrest reports, the narrative being in his [PSR], and I understand it.  Now, [government] counsel says that [the] things that trouble him most are these two drug felony arrests.
> What troubles me most is this arrest of September 16th, where he—as the [PSR] indicates, he's in a minor automobile accident with somebody that he knew, a woman that he knew.
> And the woman insists on notifying the police department of the accident, and he gets out of his car, and he pulls up his shirt and

showed her that he has a pistol in his—in his belt.  And then he makes a threatening statement, as [the PSR] says, to her.

Now, like I said, 26 years old, I don't like the idea of writing anybody off—but it appears that this defendant is what's commonly called a bad dude on the street, if he would do this.

Hunter pointed out that the state had dropped the two charges in the case stemming from that April 2016 car incident.  Hunter objected to the district court's considering that April 2016 incident in its sentencing decision, arguing the witnesses had recanted, which was why the charges were dropped, as follows:

> I would submit it's disturbing for prosecution authorities and court systems to make decisions to drop or dismiss charges, for juries to acquit people, and yet for those actions to still be held against a defendant standing in court on an unrelated case.
>
> It is disturbing that those things are going to be considered as some type of aggravating factor when the governmental authority charged with deciding whether that was—if there's a sufficient basis to go forward with that prosecution decided not to.
>
> And as a matter of fact, Your Honor, I've spoken with defense counsel in the state case who indicated to me that witnesses recanted their initial statements, and that was part of, I assume, the prosecuting authority's decision not to go forward.
>
> So I don't—I would argue to Your Honor that there is not a sufficient credible and reliable basis to hold any of that against Mr. Hunter as you decide what's most appropriate to happen to him today.

In other words, like the factual narratives of the other dropped charges, Hunter objected to the district court's considering the PSR's factual narrative as to the dismissed charges concerning the April 2016 car incident.

Hunter also encouraged the district court to consider letters from his family that showed he was "so much more than just his criminal history."  The district

8

court noted that the letters painted a very different picture of Hunter than that reflected in his PSR, and stated that "if the last [arrest] was five years ago, six years ago, these letters really would control what I do today, but it's not.  It's 2016."  Hunter then presented testimony from his mother, girlfriend, and sister, and allocuted on his own behalf.  Hunter also pointed out that he had not been convicted of a felony in the last five years.

The district court sentenced Hunter to 92 months' imprisonment, at the bottom of his advisory guidelines range and did not grant the requested variance. The district court stated that it had considered all of the 18 U.S.C. § 3553(a) factors and found that the sentence was reasonable, sufficient, and not greater than necessary.  After imposing sentence, the district asked whether the parties objected to the sentence or the manner in which it was imposed, and Hunter renewed his previous objections.

## II. DISCUSSION

### A.    Consideration of Disputed Facts in Paragraph 59

On appeal, Hunter first argues that at sentencing the district court procedurally and substantively erred in considering the PSR's factual narrative

contained in paragraph 59 about the April 2016 car incident without requiring the government to first prove the disputed facts by a preponderance of the evidence.[2]

We review the reasonableness of a sentence under a deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). First, we ensure that the district court committed no significant procedural error, such as selecting a sentence based on clearly erroneous facts. Id. at 51, 128 S. Ct. at 597. If the sentence is free of procedural errors, we then determine whether the sentence imposed was substantively reasonable, taking into account the totality of the circumstances and considering the 18 U.S.C. § 3553(a) factors. Id. A district court abuses its discretion by, among other things, giving substantial weight to an improper or irrelevant factor. United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc).

In determining a defendant's sentence, the district court "may consider, without limitation, any information concerning the background, character and conduct of the defendant." See U.S.S.G. § 1B1.4. Where a defendant fails to object to facts contained in his PSR before the sentencing court, those facts are

---

[2]In his brief, Hunter asserts that the district court erred by overruling his objection to the factual narratives of all the dropped or dismissed charges discussed in his PSR. There is no indication in the record, however, that the district court considered any other dropped or dismissed charges in making its sentencing decision except those contained in paragraph 59 of the PSR. Indeed, in first addressing Hunter's objections to paragraphs 27, 39, 43, 46, and 57 regarding other dropped or dismissed charges, the district court specifically stated it considered only his scored criminal history and not his other criminal conduct. But later on, the district court did consider the facts in paragraph 59, and thus we consider Hunter's challenge only as it pertains to paragraph 59.

deemed to have been admitted, and the district court may rely on them in imposing sentence. United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009). If a defendant clearly and specifically objects to facts contained in the PSR, however, the district court may not rely on those facts at sentencing unless the government proves the disputed facts by a preponderance of the evidence. United States v. McCloud, 818 F.3d 591, 595-96 (11th Cir. 2016); see also Fed. R. Crim. P. 32(i)(3)(B) (stating that the district court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing"). Federal Rule of Criminal Procedure 32 provides that parties must submit in writing any objections to the PSR within 14 days of receiving it. Fed. R. Crim. P. 32(f)(1).

Nevertheless, the district court "may, for good cause, allow a party to make a new objection at any time before sentence is imposed." Fed. R. Crim. P. 32(i)(1)(D). That is what happened here. We thus reject the government's argument that because Hunter failed to object to paragraph 59 in his written objections to the PSR, those facts should be deemed admitted for sentencing purposes.

Importantly, this is not a case in which the defendant wholly failed to make an objection in the district court and now seeks to challenge the facts in the PSR

11

for the first time on appeal.  See Beckles, 565 F.3d at 844.  Rather, when the district court stated at sentencing that it was particularly troubled by the facts described in paragraph 59, Hunter promptly objected to the district court's consideration of those facts.  Furthermore, Hunter specifically argued that there was no "credible and reliable basis to hold any of [those facts] against [him]" because the state charges had been dropped and counsel in the state case indicated "that witnesses recanted their initial statements."  Hunter thus sufficiently disputed the accuracy of the factual allegations in paragraph 59.

Additionally, although the district court could have overruled Hunter's objection as untimely under Rule 32(f), the district court did not do so here and in fact made no ruling at all on Hunter's objection.  Cf. United States v. Aguilar-Ibarra, 740 F.3d 587, 591 (11th Cir. 2014) (concluding the district court did not err in overruling a defendant's legal objection to a PSR enhancement for untimeliness because the defendant failed to file any written objections, and the district court's alternative ruling on the merits of the objection did not constitute a waiver the timeliness requirement).

Because Hunter clearly and adequately disputed the facts in paragraph 59, and the district court never definitively ruled on Hunter's objection to those facts, it was error for the district court to consider them at sentencing without first

requiring the government to prove them by a preponderance of the evidence. McCloud, 818 F.3d at 595-96.

Furthermore, on this record, we cannot say that the error did not affect Hunter's sentence. See Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). Rather, the district court's consideration of the facts contained in paragraph 59 of the PSR appears to have been the primary reason it declined Hunter's request for a downward variance. The district court brought up the April 2016 incident in direct response to Hunter's argument that his nonviolent history and recent attempts to turn over a new leaf warranted a downward variance. The district court further stated that the April 2016 incident was what "trouble[d] [it] most" about Hunter's case and that the facts described in paragraph 59 suggested that Hunter was "a bad dude." Moreover, in explaining why it gave less weight to the letters from Hunter's family than it otherwise might, the district court again referenced the April 2016 incident as evidence that Hunter had not truly changed his behavior. The district court also seemed open to a downward variance but for the April 2016 car incident. For example, the district court stated that "[o]rdinarily on a 26 year old man, I would think a sentence that's set by the guidelines in this case is unreasonably high" and noted that none of Hunter's scored prior convictions were for violent offenses.

Given the overall record, there is a reasonable likelihood that the district court's error in considering the disputed facts in paragraph 59 affected the outcome of the sentencing proceeding. See United States v. Monzo, 852 F.3d 1343, 1351 (11th Cir. 2017) ("An error is not harmless if there is a reasonable likelihood that it affected the defendant's substantial rights." (quotation and alteration omitted)). Accordingly, we must vacate Hunter's sentence and remand for resentencing.

Because we conclude that the district court procedurally erred in relying on the disputed facts in paragraph 59 without ruling on Hunter's objection or requiring the government to prove those facts, we do not address Hunter's separate argument that his 92-month sentence is substantively unreasonable. See United States v. Gupta, 572 F.3d 878, 888 (11th Cir. 2009) ("Because we conclude that a remand is necessary to correct procedural errors, we decline to evaluate the substantive reasonableness of [the defendant's] sentence."). Thus, nothing in this opinion should be read to suggest that the district court must grant a downward variance on remand, or that Hunter's extensive scored criminal history alone would not warrant a 92-month sentence. Rather, we conclude only that the district court procedurally erred in failing to rule on Hunter's objection to the disputed facts in paragraph 59 and in considering them without any proof at all. On remand, the district court may correct that error either by putting the government to its proof or by resentencing Hunter absent consideration of the disputed facts in paragraph 59.

14

## B.    Controlled Substance Offenses

For the first time on appeal, Hunter also argues that the district court erred in concluding that his two cocaine convictions under Fla. Stat. § 893.13(1)(a)(1) and (1)(e) were controlled substance offenses for purposes of calculating his base offense level.[3]  Hunter argues that offenses under Fla. Stat. § 893.13 do not qualify as controlled substance offenses because they lack a mens rea requirement as to the illicit nature of the substance involved.  Hunter concedes, however, that this argument is foreclosed by our precedent in United States v. Smith, 775 F.3d 1262 (11th Cir. 2014).

In Smith, this Court held that felony drug convictions under Fla. Stat. § 893.13(1) qualify as controlled substance offenses as defined in § 4B1.2(b) of the guidelines despite the state statute's lack of a mens rea requirement as to the illicit nature of the substance involved.  Smith, 775 F.3d at 1267-68; see also United States v. Pridgeon, 853 F.3d 1192, 1197-98 (11th Cir.), cert. denied, 138 S. Ct. 215 (2017) (following Smith).  The Smith Court explained that we look to the plain language of the relevant definition, and the definition of controlled substance offense in § 4B1.2(b) neither expressly nor impliedly contains a mens rea element with respect to the illicit nature of the controlled substance.  Smith, 775 F.3d at

_____

[3]As noted earlier, the two convictions are: (1) a 2008 Florida conviction for sale or delivery of cocaine, in violation of Fla. Stat. § 893.13(1)(a)(1), and (2) a 2009 Florida conviction for sale, manufacture, delivery, or possession with intent to deliver cocaine within 1,000 feet of a convenience business, in violation of Fla. Stat. § 893.13(1)(e).

1267.  Rather, the definition requires only that the predicate offense "prohibit" certain activities related to controlled substances.  Id.  The Smith Court rejected the argument that the rule of lenity required it to imply an illicit nature mens rea element into § 4B1.2(b)'s definition because the text of the definition was unambiguous.  Id.

Further, section 2K2.1 of the guidelines, under which Hunter's base offense level was calculated, provides for a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2).  The application notes to § 2K2.1 state that the term "controlled substance offense" as used therein "has the meaning given that term in § 4B1.2(b)."  U.S.S.G. § 2K2.1 cmt. n.1.  Accordingly, as Hunter concedes, Smith forecloses his challenge to the district court's use of his two Florida cocaine convictions in calculating his base offense level.

### III. CONCLUSION

In sum, we affirm the district court's use of Hunter's two Florida cocaine convictions in calculating his base offense level.  However, because the district court procedurally erred by considering the disputed facts in paragraph 59 of the PSR at sentencing, we vacate Hunter's sentence and remand for resentencing consistent with this opinion.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

17