[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12674
Non-Argument Calendar

_____

D.C. Docket No. 6:17-cr-00155-CEM-GJK-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID AUGUSTA JONES, III,
a.k.a. Da Da
a.k.a. John Larry,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 14, 2020)

Before MARTIN, ROSENBAUM, and ED CARNES, Circuit Judges.

PER CURIAM:

David Jones, III appeals his 110-month prison sentence for wire fraud. We denied his counsel's Anders motion, and we denied the government's motion to dismiss or for summary affirmance based on Jones' appeal waiver and the doctrine of invited error. We now address the merits of his appeal.

I.

For nearly two years, Jones and several co-conspirators carried out over the internet an extensive fraud scheme. They posted ads on adult dating websites posing as women seeking romantic encounters, and they exchanged text messages, emails, and phone calls with victims who responded to the ads. Then they contacted the victims from what appeared to be a law enforcement email address. Posing as agents from the Department of Homeland Security, the conspirators falsely accused the victims of soliciting a minor by responding to the ads, claimed that there were warrants out for the victims' arrest, and demanded that the victims wire them a "fine" or "fee" to clear the warrants.

Jones was indicted for one count of conspiracy to commit wire fraud and 24 substantive counts of wire fraud. He executed a plea agreement with the government under Federal Rule of Criminal Procedure 11(c). In the plea agreement, he agreed to plead guilty to five of the substantive wire fraud charges against him, and the government agreed to dismiss the remaining charges — including the conspiracy charge. He and the government agreed to submit a non-

binding joint recommendation to the court that Jones' offense level under the sentencing guidelines should be 24. That recommendation included a base offense level of 7 under U.S.S.G. § 2B1.1(a)(1), a 12-level enhancement for loss amount under § 2B1.1(b)(1), a four-level enhancement for victim hardship under § 2B1.1(b)(2)(B), a two-level enhancement for posing as a government agent under § 2B1.1(b)(9), a two-level enhancement for vulnerable victims under U.S.S.G. § 3A1.1(b)(1), and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The agreement also contained an appeal waiver.

At the change of plea hearing, the government orally summarized the factual basis of Jones' plea agreement. The court asked Jones if he had any objections. He did. Jones said "[m]ost of that stuff [he] had nothing to do with" and he did not "believe that all of that is true." The court ordered a recess so Jones could confer with his lawyer about the factual proffer. During the recess, Jones, his attorney, and the government all agreed to several changes to the factual basis of the plea agreement. When the hearing reconvened Jones said that he had no objections to the factual basis as modified. He said that he had hesitated to agree with the proffer because he did not "have personal knowledge [of] what the co-defendants were doing," but based on the discovery he had read, he believed "the government will be able to prove the essential elements." The court accepted Jones' plea and adjudicated him guilty.

The United States Probation Office prepared a Presentence Investigation Report (PSR) for Jones. The guidelines calculation in the PSR tracked the recommendation submitted by the parties in their plea agreement, and it arrived at the same offense level: 24.

At the sentence hearing, Jones stated that he had not yet gone over the PSR with his attorney, so the court ordered a recess. During the recess Jones personally wrote out three pages of objections to the PSR's guidelines calculation, most of which boiled down to a claim that he should not be held responsible for the full scope of the conspiracy because he was not a co-conspirator as a factual matter and because Count 1, the conspiracy charge, was dropped. He also argued that he did not actually agree to an offense level of 24 in the plea agreement, but instead only "acknowledged" it.

When the hearing resumed, Jones' attorney refused to adopt the written objections because he believed they were contrary to the plea agreement. The court initially told Jones that he could not make objections pro se because he was represented by counsel. But then the court entertained the objections anyway. It asked Jones' attorney to summarize the objections and asked the government to respond to them. After hearing from the parties, the court noted that Jones' objections contradicted his plea agreement. Because the court was not going to "renegotiate [Jones'] agreement with the [g]overnment," it gave him two options:

4

he could either move to withdraw his plea, which would be a "pretty steep mountain to climb," or he could make the same arguments in asking for a variance. After another recess, Jones' attorney told the court that Jones would not withdraw his plea but instead wanted to seek a variance. The court overruled Jones' objections after "reviewing the plea agreement that was signed by all of the parties and considering the fact that [the court] presided over the change of plea proceedings."

The court "adopt[ed] the statements and findings of fact as recommended by probation and determine[d] that" Jones' offense level was 24, his criminal history category was V, and his guidelines range was 92 to 115 months in prison. After hearing some testimony from both sides, the court sentenced Jones to 110 months in prison. This is Jones' appeal.[1]

## II.

Jones contends that his sentence is procedurally unreasonable for a number of reasons. In reviewing the procedural reasonableness of a sentence, we examine the district court's findings of fact for clear error and its application of the

---

[1] An argument could be made that Jones' notice of appeal was untimely. After the district court entered judgment against him on April 10, 2018, Jones wrote a letter to the court on May 5 asking for more time to file a pro se notice of appeal. The court granted that request on May 29 and Jones filed a pro se notice of appeal on June 22. But even if the notice of appeal was untimely, that does not deprive this Court of jurisdiction. See United States v. Lopez, 562 F.3d 1309, 1313 (11th Cir. 2009). And although the government notes that Jones' notice of appeal was potentially late, it does not make an issue out of that fact on appeal.

sentencing guidelines de novo.  United States v. Arguedas, 86 F.3d 1054, 1059 (11th Cir. 1996).[2]

### A.

Several of Jones' contentions relate to how the district court imposed various sentence enhancements, not whether it should have imposed them.  We begin with those.

First, Jones contends that his sentence is procedurally unreasonable because the district court adopted the statements of fact in the PSR after he objected to them.  Jones' contention is based on the rule that "[t]he district court may make findings of fact based on undisputed statements in the [PSR], but may not rely on those portions to which the defendant objected with specificity and clarity, unless the Government establishes the disputed facts by a preponderance of the evidence."  United States v. McCloud, 818 F.3d 591, 595–96 (11th Cir. 2016) (quotation marks omitted).

But as is true of many rules, there is an exception.  Here, the exception is: "A fact admitted to during a guilty plea cannot later be contested when it appears in the defendant's [PSR]."  United States v. Martinez, 584 F.3d 1022, 1027 (11th Cir. 2009).  When the defendant objects to such a fact, his objection "is without

---

[2] The government  argues that we should limit our review of several of Jones' contentions to plain error, but we need not decide that issue because there is no error, plain or otherwise.

merit and the government need not have introduced any evidence to demonstrate it." Id. "[T]he district court [can] properly consider [the admitted fact] as an undisputed fact for sentencing purposes" regardless of the defendant's objection. Id. (citing United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989)).

The district court did not err by adopting the statements of fact in the PSR over Jones' objections. The thrust of his pro se objections was that he was not actually involved in the larger scheme or conspiracy but instead was running an identical scam by himself. For that reason, Jones argued, he should not be held accountable for the scheme's full scope. But Jones admitted at the change of plea hearing that he had been involved in the larger scheme. Jones not only agreed to the written factual basis of the plea agreement, but with the help of his attorney he also carefully amended another part of it in open court. That document describes Jones as one of the participants in an extensive fraud scheme. It details that Jones and two "co-conspirators" began their "scheme to defraud" (singular) in or before August 2015 and "continued it" (again, singular) through June 2017. The document, which he agreed to, also describes how in the course of carrying out that fraud, Jones and his co-conspirators traded victims among themselves. Those facts establish that Jones was, in fact, part of a larger scheme or conspiracy.[3] Because

---

[3] By our count, the factual basis uses the words "conspiracy" and "co-conspirator" a combined 18 times. Jones did not even attempt to edit out those words at his change of plea hearing.

Jones' objections at sentencing contradicted the facts he admitted in his plea agreement, the objections lacked merit and the government did not have to introduce any evidence to support the admitted facts. See Martinez, 584 F.3d at 1027.

Jones also contends that the district court failed to explain why it overruled his objections, which he says prevents us from conducting meaningful appellate review.[4] See United States v. Jones, 933 F.2d 1541, 1546 (11th Cir. 1991) ("To facilitate our review of sentencing decisions, district courts should make explicit findings of fact and conclusions of law."). But the record makes clear that the court overruled Jones' objections because they contradicted Jones' plea agreement, including the factual basis of that agreement.[5] The court told Jones:

> I carefully and painstakingly went over [the plea agreement] with you. We even amended the [factual basis of the] agreement. This doesn't happen that often. We amended the agreement in court, which further supplements the Government's argument that everyone knew what the bargain was or what the deal was.

---

[4] Jones also makes a passing reference, in the procedural history section of his opening brief, to the court's supposed failure to explain why it imposed the sentence enhancements it did. But Jones waived this issue by failing to sufficiently brief it. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681–82 (11th Cir. 2014).

[5] Although the district court did not expressly rely on the agreed upon factual basis, it was incorporated into the written plea agreement by reference. Not only that, but in deciding to enforce the agreement the court mentioned several times that Jones had amended it; the factual basis was the only part of the agreement that Jones amended.

8

The court also told Jones that in light of his plea agreement, he had only two options if he wanted a lower sentence: withdraw his plea or argue for a variance. Because the factual admissions that Jones made in his plea agreement supported the guidelines calculations in the PSR, see Part II.B, below, the court was correct. See Martinez, 584 F.3d at 1027.  The court concluded by saying:

> I've considered the matters brought forth by the defense, and I would note for the record that [Jones' attorney] has not adopted the objections, but, nevertheless, in reviewing the plea agreement that was signed by all of the parties and considering the fact that I presided over the change of plea proceedings, I'm going to hereby find that the objections stated to the factual statements and/or guideline calculations are overruled.

That explanation was enough for us to conduct meaningful appellate review of Jones' objections.

Finally, Jones contends that the district court failed to independently calculate his guidelines range.  He argues that the court failed to resolve his objections or make its own calculation of his guidelines range.  The district court has the "ultimate responsibility to ensure that the Guidelines range it considers is correct."  Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904 (2018).  Here the court met that responsibility.  It did not fail to resolve Jones' objections; it overruled them because they contradicted his plea agreement.  And it did not fail to

9

calculate his guidelines range; it adopted the calculations in the PSR after overruling Jones' objections to them. There was no error.[6]

### B.

Jones also contends that the district court clearly erred by imposing guidelines enhancements for the full $345,000 loss amount, for causing substantial financial hardship to five or more victims, and for impacting vulnerable victims.[7] The court did not clearly err.

First, the loss amount enhancement was not clear error. See U.S.S.G. § 2B1.1(b)(1)(G). Even though the conspiracy charge against Jones was dismissed, he still could be held responsible for the acts of his co-conspirators (and the resulting losses) if the acts were "within the scope of [a] jointly undertaken criminal activity," "in furtherance of that criminal activity," and "reasonably foreseeable in connection with that criminal activity." U.S.S.G.

---

[6] Jones points to a stray comment suggesting that the district court believed it had to reach an adjusted offense level of 24 because "if the adjusted offense level of 24 changes, then the [g]overnment is not receiving the benefit of their bargain" under the plea agreement. That's a problem, Jones says, because the recommendation in the plea agreement was by its own terms not binding on the court. But the court made other statements showing that it understood the recommendation in the plea agreement was non-binding. It noted that "the total adjusted offense level that was proposed in the plea agreement was 24," which was "a pretty good estimate because that's exactly what probation is recommending at this time [in the PSR]. So they hit the nail on the head with that estimate." (Emphases added.) It's apparent that the court knew the recommendation in the plea agreement was just an estimate of what Jones' final guidelines calculation would be, even if the court could have been clearer about saying so.

[7] We assume, without deciding, that Jones' pro se objections preserved these issues. We can do so because even if his pro se objections did not preserve the issues and we reviewed for plain error, we would find no error, plain or otherwise.

§ 1B1.3(a)(1)(B)(i)–(iii). "A 'jointly undertaken criminal activity' is a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." Id. cmt. n.3(A). "[A]ctions that suggest that the defendant was actively involved in a criminal scheme permit the inference that the defendant agreed 'to jointly undertake' that scheme." United States v. Whitman, 887 F.3d 1240, 1248 (11th Cir. 2018).

The scheme to defraud that Jones participated in was a jointly undertaken criminal activity. He was an active participant in the fraud scheme. He personally received at least 30 payments from victims totaling nearly $22,000 and he traded victims with his co-conspirators. Each time one of Jones' co-conspirators defrauded someone, that was an act within the scope of and in furtherance of the jointly undertaken criminal activity. And those acts were foreseeable to Jones, who necessarily knew that his co-conspirators were also defrauding people. The district court did not commit clear error when it adopted the PSR's finding that Jones was responsible for the entire loss amount resulting from the scheme.

Second, the substantial financial hardship enhancement was not clear error. See U.S.S.G. § 2B1.1(b)(2)(B). Among the factors to consider in determining whether the offense caused the victim substantial financial hardship is whether the crime resulted in a victim "suffering substantial loss of a retirement, education, or other savings or investment fund." Id. § 2B1.1 cmt. n.4(F)(iii). Jones admitted

11

that at least five victims suffered substantial financial harm as a result of the scheme, including one victim who cashed in his retirement account and other victims who used up all of their savings to meet the fraudulent demands. Even if Jones did not personally defraud all of these victims, the acts of his co-conspirators were relevant conduct attributable to him for the reasons discussed above. There was no clear error.

Finally, the vulnerable victims enhancement was not clear error. See U.S.S.G. § 3A1.1(b)(1). That enhancement applies "to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability." Id. § 3A1.1 cmt. n.2. It does not matter whether the defendant intentionally targeted vulnerable victims, as long as he knew the victims were vulnerable. United States v. Birge, 830 F.3d 1229, 1233–34 (11th Cir. 2016). Jones admitted that members of the military were particularly vulnerable to the fraud scheme because they could be threatened with being exposed to their commanding officers if they did not pay up. Clearly, Jones knew about those victims' unusual vulnerability because he admitted to personally taking advantage of it. The district court did not clearly err.

**AFFIRMED.**

12