**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12270

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DEVONTAE JAMMELL MORRIS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:24-cr-00003-CDL-CHW-1

_____

Before BRANCH, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

Devontae Morris appeals his 115-month sentence of imprisonment for possessing a firearm as a convicted felon. On appeal, he

challenges the calculation of his advisory guideline range and the reasonableness of his sentence. After careful review, we affirm.

## I. BACKGROUND

After a Glock 19 9mm semiautomatic pistol was found in his car, Morris pleaded guilty to an indictment charging him with possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

The presentence investigation report ("PSI") provided a base offense level of 26 because the firearm was found with an extended magazine, and Morris had "at least two felony convictions of either a crime of violence or a controlled substance offense." United States Sentencing Guidelines Manual § 2K2.1(a)(1) (Nov. 2023). To support the assessment of this enhanced base offense level, the PSI referenced (1) a Georgia conviction for aggravated assault in 2019, which involved Morris "fir[ing] his firearm towards and into a residence occupied by three female victims," and (2) a 2019 Georgia conviction for possession with intent to distribute methamphetamine and cocaine. The PSI also applied a 2-level reduction for acceptance of responsibility, *id.* § 3E1.1(a), and a 1-level reduction for Morris timely notifying the government of his intention to plead guilty, *id.* § 3E1.1(b). Morris's total offense level was 23.

The PSI calculated a total of 22 criminal history points based on Morris's numerous convictions and the fact that he committed the instant offense while on state probation, which was 9 points above the threshold for the maximum criminal history category of

VI. With a total offense level of 23 and a criminal history category of VI, the PSI provided an advisory guideline range of 92 to 115 months of imprisonment.

Morris objected to the PSI and asserted that his Georgia aggravated assault and controlled substance convictions could not be used to support an enhanced base offense level under § 2K2.1(a)(1). He acknowledged, however, that his challenges were foreclosed by Circuit precedent. Morris also filed a sentencing memorandum and supplied the court with character letters, requesting a downward variance based on his difficult childhood and this trauma's impact on his adulthood, as well as his significant need for substance abuse and mental health treatment.

At sentencing, the district court overruled Morris's objections to his base offense level because the PSI correctly utilized the applicable law in its calculations. The court then noted that it was considering an upward variance because Morris's criminal history category arguably "understate[d] or underrepresent[ed] his actual . . . history given" its "nature and extent."

Morris's counsel argued that an upward variance was inappropriate because Morris's convictions already significantly enhanced his base offense level. Counsel also noted that he had recently attended a presentation by a Harvard doctor who explained that the average male brain was "not truly formed until between 24 and 26 years old." He contended that the court should consider Morris's "youthfulness" as a mitigating factor, because most of his convictions occurred between the ages of 17 and 24, when many

are prone to impulsivity. Counsel further asserted that Morris, who was 29 years old at the time of sentencing, "should be less likely to recidivate" based on his older age and the fact that a within-guidelines sentence would still be a "significant amount of time." Following further discussion between the court and counsel about the methodology behind this argument and the impact of Morris's childhood on his development, Morris allocuted, taking responsibility for his actions, explaining his desire to be there for his children, and expressing a commitment to participate in a drug treatment program.

The court then adopted the PSI's guideline calculations and noted that it had considered "the advisory sentencing range" and the 18 U.S.C. § 3553(a) factors, in addition to making "an individualized assessment" of the facts presented. It sentenced Morris to 115 months of imprisonment with 3 months of supervised release to follow. Morris objected to the procedural and substantive reasonableness of his sentence, and this appeal followed.

## II. STANDARD OF REVIEW

We review a district court's interpretation and application of the Sentencing Guidelines de novo. *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023) (en banc). Specifically, we review de novo whether a prior state conviction qualifies as a "controlled substance offense," *United States v. Bates*, 960 F.3d 1278, 1293 (11th Cir. 2020), or a "crime of violence" under § 2K2.1(a), *United States v. Hicks*, 100 F.4th 1295, 1297 (11th Cir. 2024). However, we review sentencing calculation objections raised for the first time on appeal

24-12270            Opinion of the Court            5

only for plain error. *United States v. Bennett*, 472 F.3d 825, 831 (11th Cir. 2006).

When reviewing the reasonableness of a sentence, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## III. DISCUSSION

A. *The District Court Correctly Calculated Morris's Base Offense Level*

The Sentencing Guidelines provide, in relevant part, a base offense level of 26 for someone convicted of violating § 922(g) by possessing "a semiautomatic firearm that is capable of accepting a large capacity magazine" after "sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(1). As he did below, Morris challenges on appeal the district court's reliance on his state convictions to impose this enhanced base offense level. We address each Georgia conviction separately.

### 1. Possession with Intent To Distribute

Morris first asserts that his conviction for possession with intent to distribute cannot qualify as a "controlled substance offense" because, at the time of this state conviction, Georgia law regulated "ioflupane and conformational isomers of cocaine and methamphetamine," substances that are not currently on the federal drug schedule.

However, we have already rejected this argument and held that "a drug regulated by state law at the time of conviction, even if it is not federally regulated, and even if it is no longer regulated by the state at the time of federal sentencing" is a "controlled substance offense" for the purposes of § 2K2.1(a). *United States v. Dubois* (*Dubois I*), 94 F.4th 1284, 1300 (11th Cir. 2024), *cert. granted, judgment vacated*, 145 S. Ct. 1041 (2025), *reinstated by, United States v. Dubois* (*Dubois II*), 139 F.4th 887 (11th Cir. 2025); *see* U.S.S.G. § 2K2.1, cmt. (n.1); *id.* § 4B1.2(b). And, in this case, Georgia law "regulated" both cocaine and methamphetamine at the time of Morris's state conviction. *See* O.C.G.A. § 16-13-26(1)(D), (3)(B) (2019).

Although Morris asserts that *Dubois I* was wrongly decided, "we are bound to follow a prior binding precedent unless and until it is overruled by this Court en banc or by the Supreme Court," *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016) (citation modified), and there is no "exception to this rule based on a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at the time," *Hicks*, 100 F.4th at 1300 (citation modified)). As such, we conclude that Morris's conviction for possession with intent to distribute cocaine and methamphetamine was properly considered a "controlled substance offense" under § 2K2.1(a).

## 2. Aggravated Assault

Morris similarly argues that his 2019 aggravated assault conviction does not qualify as a "crime of violence" under 2K2.1(a).

The commentary to § 2K2.1 defines "crime of violence" by cross-reference to § 4B1.2, which provides:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--(1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (2) is murder, voluntary manslaughter, kidnapping, [or] aggravated assault . . . .

U.S.S.G. § 2K2.1, cmt. (n.1); *id.* § 4B1.2(a). The second clause of § 4B1.2(a) is "referred to as the enumerated offenses clause." *Hicks*, 100 F.4th at 1298.

Morris asserts, in relevant part, that his conviction does not fall under the enumerated offenses clause because the elements of Georgia aggravated assault, which require only a general intent mens rea, do not roughly correspond to the elements of generic aggravated assault, which require "a more exacting" mens rea. This argument is again foreclosed by our precedent.

In *United States v. Morales-Alonso*, we "conclude[d] that Georgia aggravated assault with a deadly weapon . . . in violation of O.C.G.A. § 16-5-21(a)(2) contains substantially the same elements as generic aggravated assault," meaning that a defendant's aggravated assault conviction was a "crime of violence" under the enumerated offenses clause applicable to U.S.S.G. § 2L1.2. 878 F.3d 1311, 1317 (11th Cir. 2018).

In *Hicks*, we applied *Morales-Alonso*'s reasoning to § 4B1.2(a)'s definition of a "crime of violence," as this section and § 2L1.2 "use materially identical language to define" the term. 100 F.4th at 1298. Similar to Morris, the *Hicks* defendant argued that his Georgia conviction for aggravated assault with a deadly weapon did not qualify as a "crime of violence" under § 4B1.2(a)(2) because "the Georgia offense requires a mens rea of only recklessness, whereas generic aggravated assault requires a mens rea of extreme indifference recklessness." *Id.* at 1299 (citation modified).

Despite the defendant's arguments to the contrary, we held that his claim was foreclosed because *Morales-Alonso*'s "conclusion that Georgia aggravated assault with a deadly weapon is not categorically broader than generic aggravated assault was necessary to our Court's decision, and therefore constitute[d] a holding that binds future panels." *Id.* We elaborated that *Morales-Alonso* "did not limit its holding to that element or assume that the other elements of the generic and Georgia offenses were the same" but rather "explicitly concluded that O.C.G.A. § 16-5-21(a)(2) contains substantially the same elements as generic aggravated assault and qualified as a crime of violence." *Id.* at 1301 (citation modified).

We are bound to follow these precedential decisions, as neither *Hicks* nor *Morales-Alonso* have been overruled by our Court sitting en banc or by the Supreme Court. *White*, 837 F.3d at 1228. Nonetheless, Morris attempts to distinguish his case by arguing that neither *Hicks* nor *Morales-Alonso* discussed the mens rea required for generic aggravated assault and by asserting for the first

time on appeal that the government did not submit *Shepard*[1] documents to establish the elements of his Georgia conviction.

As an initial matter, "there is no exception to the prior panel precedent rule where the prior panel failed to consider arguments raised before a later panel." *Hicks*, 100 F.4th at 1299–300 (citation modified). Additionally, the district court was permitted to "rely on undisputed facts contained in the PSI in determining [Morris's] sentence." *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013).

While Morris objected to the PSI's calculation of his base offense level, he failed to challenge the PSI's recitation of the facts underlying his aggravated assault conviction. *See Bennett*, 472 F.3d at 832 ("[C]hallenges to the facts contained in the PSI must be asserted with specificity and clarity."); *see also United States v. McCloud*, 818 F.3d 591, 599 (11th Cir. 2016) ("A defendant makes a proper objection when he identifies the specific PSI paragraphs to which he objects and states the reason for his objection . . . ."). Morris's failure to object to these facts constituted an admission that his aggravated assault conviction was premised on "fir[ing] his firearm towards and into a residence occupied by three female victims." *See Bennett*, 472 F.3d at 833–34; *see also McCloud*, 818 F.3d at 599 (explaining, in a case concerning the Armed Career Criminal Act, that a defendant's failure to object to a particular PSI paragraph "makes those facts undisputed and available to the Government, despite the express incorporation of a non-*Shepard* source").

---

[1] *Shepard v. United States*, 544 U.S. 13 (2005).

Given our binding precedent and Morris's admission of crucial facts, we cannot say that the district court erred, plainly or otherwise, in considering Morris's aggravated assault conviction as a "crime of violence" under 2K2.1(a). *See Bennett*, 472 F.3d at 831, 834; *see also* O.C.G.A. § 16-5-21(a)(2) (2019).

B. *Morris's Sentence Is Procedurally and Substantively Reasonable*

In assessing the reasonableness of a sentence, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Gall*, 552 U.S. at 51. Based on our analyses above, we are satisfied that the district court properly calculated Morris's guideline range and reject his procedural reasonableness challenge.

We now turn our focus to the substantive reasonableness of Morris's sentence. Section § 3553(a)'s "overarching" instruction to courts is that any sentence must be sufficient, but not greater than necessary, to comply with the purposes of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). These sentencing purposes include the need to reflect the seriousness of the offense, promote respect for the law, sufficiently punish the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2). A court must also consider the offense's nature and circumstances, the defendant's history and characteristics, the types of sentences available, the applicable guideline range, any pertinent policy statements from the Sentencing Commission, the need to avoid unwarranted sentence

disparities between similarly situated defendants, and the need to provide restitution to any of the defendant's victims. *Id.* § 3553(a)(1), (3)–(7).

Morris contends that his 115-month sentence is greater than necessary to achieve these sentencing goals, and the district court abused its discretion by failing to explain its reasoning for imposing a sentence at the top of his guideline range. We disagree.

The district court was not required to explicitly state on the record that it had considered all of the sentencing factors or expressly discuss each of them. *United States v. Ortiz-Delgado*, 451 F.3d 752, 758 (11th Cir. 2006); *see United States v. Irey*, 612 F.3d 1160, 1195 (11th Cir. 2010) (en banc) ("No member of [our] Court has ever before indicated that a sentencing judge is required to articulate his findings and reasoning with great detail or in any detail for that matter."); *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007) (explaining that a court's failure to discuss mitigating evidence does not mean "that [it] erroneously 'ignored' or failed to consider" it). Rather the court's "acknowledgment that it ha[d] considered the § 3553(a) factors and the parties' arguments [wa]s sufficient." *United States v. Butler*, 39 F.4th 1349, 1356 (11th Cir. 2022). The district court also remarked at the beginning of the sentencing hearing that Morris's criminal history may justify imposing an upward variance, and it engaged with Morris's counsel's detailed argument about the science of brain development, the impact of adverse childhood events, and the nature of youthful offenders.

The weight given to each § 3553(a) factor is left to the discretion of the district judge, and, as such, the court was permitted to give substantial weight to Morris's history and characteristics over any mitigating arguments presented on Morris's behalf. *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1254–55, 1259–60, 1263–64 (11th Cir. 2015); *see also United States v. Osorio-Moreno*, 814 F.3d 1282, 1287–88 (11th Cir. 2016). Morris's 115-month sentence also falls within his advisory guideline range, and it is significantly below the applicable 15-year statutory maximum, which is further indicative of reasonableness. 18 U.S.C. § 924(a)(8); *see United States v. Muho*, 978 F.3d 1212, 1227 (11th Cir. 2020) ("[S]entences that fall within the Guidelines range or that are below the statutory maximum are generally reasonable.").

We will vacate a sentence only when "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (citation modified). We are not left with such a conviction in this case and find that the district court did not abuse its discretion in imposing Morris's 115-month, within-guidelines sentence.

## IV. CONCLUSION

We **AFFIRM** Morris's sentence.